THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARY ELIZABETH HAWKINS, Defendant-Appellant.
Second District    No. 2—90—1380

Opinion filed November 20, 1991.

John F. Donahue, of Donahue, Sowa & Bugos, of Lisle, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:
Defendant, Mary Elizabeth Hawkins, appeals from the trial court's denial of her petition to rescind the statutory summary sus-

pension of her driving privilege pursuant to section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1). Defendant's sole appellate contention is that it was against the manifest weight of the evidence for the trial court to grant the State's motion for a directed finding that the arresting officer had probable cause to arrest defendant for driving under the influence of alcohol (DUI). We affirm.

The record discloses that, on October 18, 1990, defendant was arrested and charged by complaint with DUI and driving with a blood-alcohol concentration (BAC) of 0.10 or greater (Ill. Rev. Stat. 1989, ch. 95½, pars. 11—501(a)(1), (a)(2)) and reckless driving by driving in excess of 100 miles per hour and driving into the lanes of oncoming traffic numerous times (Ill. Rev. Stat. 1989, ch. 95½, par. 11—503). The law enforcement sworn report filed in the trial court avers that the basis for the suspension was that defendant's BAC was 0.17 and the reasonable grounds for the violation relied on by the arresting officer included defendant's erratic driving, the strong odor of an alcoholic beverage on defendant's breath, glassy and bloodshot eyes, slurred speech, and the lack of physical coordination.

The three grounds raised by the evidence at the summary suspension hearing were (1) whether there was probable cause for the traffic stop; (2) whether there was probable cause to arrest defendant for DUI; and (3) whether defendant was adequately warned of the consequences of taking or refusing the breathalyzer test.

We recite only those facts relevant to the issue of probable cause to arrest defendant for DUI. At the hearing, Laurie Solon, a passenger in defendant's car, testified in defendant's behalf. Solon testified that on October 18, 1990, at about 6:25 p.m., she went to dinner with defendant at El Matador in Bartlett, Illinois. Defendant arrived at about 6:40 p.m. Solon observed defendant drink 1½ to 2 glasses of wine. She thought defendant had her second glass of wine at 7:50 p.m. Solon drank two margaritas. As they were leaving the restaurant, someone offered to buy them a drink because it was Solon's birthday. Solon declined to have another drink, but defendant sipped on Drambuie, an alcoholic liquor.

At 9:28 p.m., defendant was driving her automobile westbound on Stearns Road when she was stopped. According to Solon, the speedometer never exceeded 49 miles per hour, and defendant did not violate any lane markings or traffic laws; she did not believe defendant was intoxicated. After noticing the police lights behind them, defendant pulled over immediately. When defendant asked

the police officer why he had stopped her, Solon interjected, "She wasn't speeding, Officer. I looked at the speedometer." According to Solon, the officer replied, "Lady, be quiet. I had to go 100 miles to catch her." The officer asked defendant to step out of the car. He stated that defendant was going at an excessive speed. Through the window, Solon observed defendant "walk the line." Solon acknowledged that the police pursued them with the siren on. She denied that defendant had to fumble through her purse and wallet to get the driver's license, but stated that one could never find anything in her purse. When defendant performed the walk-and-turn test, her arms were about one foot away from her body. Solon only saw defendant take four or five steps and did not recall seeing her turn around and walk back. Solon did not observe the one-leg-stand test.

Defendant testified that she was at the El Matador restaurant to have dinner with Solon. She had two glasses of wine; she finished the second glass during dinner. On the way out, she was offered a drink, and she had a few sips of Drambuie. After she left the bar, as she was driving westbound on Stearns Road, she noticed that her speed was somewhere in the 40 miles-per-hour range. She denied that she violated any speed or traffic laws. She saw the police lights and immediately pulled over. The officer came to the door and asked for her driver's license. She said she may have had difficulty finding her wallet in her purse, but then immediately gave the officer the license from the wallet. When the officer asked her to step out of the car, she engaged in what she characterized as her awkward-looking ritual of getting out of the car: she leaned over, put her left arm on the dashboard and swung herself out.

When she asked why she had been stopped, the officer said, "I had to go almost 100 miles an hour to catch you." Defendant denied that she was traveling at that speed. The officer asked her to perform field sobriety tests. After the officer demonstrated the heel-to-toe test for her, she performed it, counting to 10. She then pivoted and walked back. She could not recall if she raised her hands as she walked. When she attempted to perform the one-leg-stand test, she counted to three and could not retain her balance. She did not believe she was intoxicated. She tried the other leg and could not do the test, and, after yet another attempt, she said, "I just can't do this." She was then arrested.

On cross-examination, she stated that she believed that she was traveling between 45 to 50 miles per hour. Regarding the one-leg-stand test, she acknowledged that the officer gave her instructions

and demonstrated the test. She was asked to count to 10 or 12, but she only got to 3 or 4. She denied that she was told to keep her arms to her side. She did not tell the officer that she had any physical problems preventing her from performing the tests. On redirect examination, she stated that she had back surgery four or five years before, but that she was not debilitated by it. On re-cross-examination, she admitted that she did not tell the officer about any back problem, but she stated that she had never tried this test before.

After the State moved for a directed finding, the trial court granted the motion, finding that the officer had probable cause to arrest defendant for DUI. The court also found that the proceeding should continue regarding the issues of probable cause to make the traffic stop and the implied-consent warning.

Defendant argues that the court's directed finding of probable cause to arrest her for DUI is against the manifest weight of the evidence.

In a summary suspension hearing, the burden of proof is on the motorist to present a *prima facie* case for rescission (*People v. Orth* (1988), 124 Ill. 2d 326, 338), and, in order for the motorist to prevail, the trial court must find that the defendant has satisfied his or her burden of proof by a preponderance of the evidence (*People v. Kurtz* (1988), 171 Ill. App. 3d 1068, 1070). Whether a defendant has met this burden of proof is a question of fact for the trial judge, and this determination will not be overturned on review unless it is against the manifest weight of the evidence, that is, unless an opposite conclusion is clearly evident from the record. *Kurtz*, 171 Ill. App. 3d at 1071.

■ The petition to rescind the summary suspension represents an action by a defendant asking the court to reverse an action by the State that has already taken place. (*People v. Nunn* (1987), 156 Ill. App. 3d 604, 607.) In this type of proceeding, the officer's sworn report must be on file in the circuit court's record, and, to attack the summary suspension, the defendant-petitioner must also attack the law enforcement officer's sworn report since the defendant has the burden of proof. (*Nunn*, 156 Ill. App. 3d at 607.) While the party not having the burden of proof may introduce contrary evidence, it is under no compulsion to do so and may submit the issue to the trier of fact on the evidence presented by the burdened party. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §301.4, at 74 (5th ed. 1990), citing *Caley v. Manicke* (1961), 29 Ill. App. 2d 323, *rev'd on other grounds* (1962), 24 Ill. 2d 390.

In considering a motion for a directed finding, a two-stage analysis is applied. In ruling on the State's motion for a directed finding in a *nonjury* case such as this, the court must weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110; *Prevendar v. Thonn* (1988), 166 Ill. App. 3d 30, 34) and draw reasonable inferences from the testimony (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154). The trial court is to determine in the first instance whether the motorist (here, defendant), acting in the role of proponent, has made out a *prima facie* case, that is, whether he or she has presented at least some evidence on every element necessary to the cause of action. (*Kokinis*, 81 Ill. 2d at 154.) The failure to introduce such evidence warrants a directed finding for the State as movant. See *Kokinis*, 81 Ill. 2d at 155.

However, if the court determines that the plaintiff (here, defendant) has made out a *prima facie* case, the court, as the trier of fact, must then weigh that evidence. This weighing process may result in the negation of some of the evidence necessary to plaintiff's *prima facie* case, in which event the court should grant the movant's motion and enter judgment in its favor. (See *Kokinis*, 81 Ill. 2d at 155.) As *Orth* points out, in considering whether the testimony presented by the motorist constitutes a *prima facie* case, the burden of proof will shift to the State only if the trial court finds such testimony credible. (*Orth*, 124 Ill. 2d at 341.) The court is *not* to view the evidence in the light most favorable to the plaintiff (here, defendant motorist). *Kokinis*, 81 Ill. 2d at 154.

To ascertain whether the probable cause requirement has been met, a court must determine whether a reasonable and prudent person, having the knowledge possessed by the *officer* at the time of the arrest, would believe defendant committed the offense. (*People v. Brodeur* (1989), 189 Ill. App. 3d 936, 940.) In deciding the question of probable cause, courts need not be unduly technical; rather, they must deal with probabilities. (*Village of Algonquin v. Ford* (1986), 145 Ill. App. 3d 19, 22.) The facts upon which probable cause to arrest is based need not be sufficient to convict, but something more than a hunch or a mere suspicion is required. *People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 694.

As we have noted, a defendant may present some evidence on every element of his or her *prima facie* case, but in weighing the evidence and the credibility of the witnesses, the court may choose to disbelieve defendant's evidence. In the case at bar, the defense testimony, even if believed, does not require a finding of no

probable cause to arrest. Defendant admitted that she had had three drinks in less than three hours prior to the stop. Both defendant and her witness stated that the officer said he stopped her because he had to go up to 100 miles per hour to catch her. It can be inferred from defendant's testimony that she took an unusual posture when she steadied herself on the dashboard as she swung herself out of her car. There is some evidence that she had difficulty in getting her license from her purse. While defendant stated that she thought she had passed the walk-and-turn test, there is testimony indicating that her arms were away from her sides, presumably to assist in balancing herself. She clearly admitted that she could not perform the one-leg-stand test even after three attempts, and she made no mention of any physical disability to the officer.

Notwithstanding defendant's testimony that she was not speeding and that she did not believe she was intoxicated, we are persuaded that, on the facts presented, the officer could have concluded from the circumstances apparent to him that she was driving in an impaired condition. The trial court's finding was neither unreasonable nor improbable. Simply put, defendant did not meet her burden of proof. Contrary to the State's argument rationalizing the court's finding upon the sworn police report, there is *nothing* in the record to reflect the court considered any substantive evidence other than that presented by the defendant in her case in chief. The judgment of the circuit court was not palpably against the manifest weight of the evidence and will therefore be affirmed.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.