THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES M. WISE, Defendant-Appellant.

Fourth District   No. 4—96—0035

Argued July 10, 1996.—Opinion filed August 1, 1996.

D. Peter Wise (argued), of Metnick, Wise, Cherry & Frazier, of Springfield, for appellant.

Patrick W. Kelley, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Scott A. Manuel (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:
On October 12, 1995, defendant James M. Wise was arrested and charged with driving under the influence of alcohol (DUI) in violation of section 11—501(a)(2) of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501(a)(2) (West Supp. 1995)). Pursuant to section 11—501.1 of the Code (625 ILCS 5/11—501.1 (West 1994)), the arresting officer, Chris Steil, submitted a sworn report that defendant refused to submit to a chemical test. Defendant filed a petition to rescind statutory summary suspension, claiming that Officer Steil did not have reasonable grounds to suspect defendant had been DUI. After defendant concluded his evidence, the State moved for a judgment at the close of proponent's case. The trial court denied defendant's petition, and defendant appeals, alleging that the trial court erred in granting the State's motion. We affirm.
The following evidence was presented at the hearing. On October 12, 1995, between 6 p.m. and 7:30 p.m., defendant drank approximately $3^1/_2$ beers. Defendant denied having anything more to drink thereafter. Defendant then had supper at a friend's house and

left for home at about 10:30 p.m. As he was driving home, defendant attempted to insert an audiotape into his truck's tape deck. While doing so, he dropped the cigarette he was holding in his right hand. The cigarette fell to the passenger side floor of defendant's truck, where it landed upon various papers. Defendant observed the embers of the cigarette and saw the smoke rising from the papers. While leaning over to retrieve the cigarette, defendant hit a parked truck. In the accident, defendant hit his head on the dashboard and hit his chest on the gearshift lever.

Defendant exited the truck and examined the damage to both trucks. He then walked up to a house to determine if the truck belonged to the occupant of the house. Three people came out of the house. Defendant explained what happened. One person was Michael Trello, the owner of the truck. The other people were Trello's parents, George Trello and his wife. Defendant testified that he suggested the Trellos call the police. Mrs. Trello phoned the police while defendant, George, and Michael examined the damage to Michael's truck. During this inspection, defendant slid underneath Michael's truck to straighten out the tailpipe, which had been bent in the accident. While waiting for the police to arrive, defendant exchanged insurance information with the Trellos.

The police arrived about 50 minutes after the accident. Officer Steil was an officer in training at the time of the incident and was accompanied by his field training officer, J. Kohler. Upon his arrival, Steil approached defendant and the Trellos. Defendant explained the accident to Steil. Steil did not notice whether defendant was having any difficulty balancing, but he noted that defendant's breath smelled strongly of alcohol and that defendant's eyes were glassy and bloodshot. According to Steil, defendant's speech was also "a little slurred." Steil decided to conduct a field-sobriety test.

First, defendant was asked to say the alphabet. Steil said he heard each letter clearly and distinctly, but that defendant stopped after the letter "T." Defendant agrees he stopped at the letter "T," but argues that he did so in order to take a breath and that Steil then told him, "That's enough." Steil testified that when defendant stopped at the letter "T," Steil waited a few seconds before asking defendant if he was finished, to which defendant responded "yes, he was." Steil's police report is apparently silent on this issue.

Defendant was next asked to perform a "one-legged stand test." In this test, the defendant was asked to stand on one leg and, while holding the other foot six inches off the ground, count from 1001 to 1030. Defendant claims that he set his raised foot to the ground only twice during the count, once at 1007 and again at 1028. He claims he

did not stumble. Steil agrees that defendant put his foot down during this test, but claims that it happened three times, at 1017, 1022, and 1028. Steil said that defendant set his foot down long enough to regain his balance.

Steil then asked defendant to perform a heel-to-toe test in which he was to take nine steps heel-to-toe along the sidewalk, pivot, and take nine heel-to-toe steps back. Defendant was to count each step out loud. Defendant initially objected to this test because the sidewalk was broken and had weeds growing in the cracks. Steil took defendant to a different portion of the sidewalk. Defendant took nine steps and then turned and paused. He claims that Steil then told him, "Okay. Continue on and take your nine steps back." Defendant claims he then completed the test. Steil testified that defendant did not count for the first few steps, and then stumbled on the third or fourth step. Defendant then asked if he could start over. Steil said that defendant "was swaying and catching his balance the whole time. He was doing the test pretty good except for he had to start over and he miscounted and he wasn't following the instructions of the test on the way back." Steil said that defendant only took seven steps on the way back.

Finally, defendant was asked to perform the "finger-to-nose" test. While defendant touched his right index finger to his nose and then his left index finger to his nose, Steil testified that defendant started performing the test before Steil finished giving the instructions. Defendant was arrested for DUI shortly thereafter. Prior to taking the field-sobriety test, defendant may have complained about a stiff neck, but according to Steil, he refused medical treatment. On cross-examination, Steil acknowledged that some injuries may affect an injured person's balance, but explained that he asked defendant if he wanted to perform the field-sobriety test and that defendant had said, "Yes."

George Trello testified on behalf of the defendant. Trello described defendant's speech, immediately after the accident, as being "shook up" and "fast and nervous." Trello did not smell alcohol on defendant's breath, nor did he notice whether defendant's speech was slurred. Trello did not believe that defendant was under the influence of alcohol. Trello, however, did not observe defendant take the field-sobriety test.

■ Defendant appeals, alleging the trial court erred in granting the State's motion for judgment at the close of proponent's case, arguing that he had proved a *prima facie* case for rescission. A summary suspension is a civil action in which the motorist acts in the role of plaintiff. *People v. Scott*, 249 Ill. App. 3d 597, 600, 619 N.E.2d

809, 813 (1993). In a summary suspension proceeding, the motorist must show by a preponderance of the evidence that he is entitled to rescission. *Scott*, 249 Ill. App. 3d at 600, 619 N.E.2d at 813.

■ In jury trials, verdicts may be directed only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967). By statute there is a different rule in nonjury trials. Where there is a motion in a nonjury case to find for defendant at the close of plaintiff's evidence, "the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence," and rule accordingly. 735 ILCS 5/2—1110 (West 1994). Section 2—1110 of the Code of Civil Procedure recognizes that where the judge is the trier of fact it is illogical to require the defendant to put on his case when the trial court would rule for defendant at the close of plaintiff's case.

■ There is a two-stage procedure under section 2—1110. At the first stage the trial court determines whether plaintiff has made out a *prima facie* case, whether "he has *** presented at least some evidence on every element essential to his cause of action." *Kokinis v. Kotrich*, 81 Ill. 2d 151, 154, 407 N.E.2d 43, 45 (1980). If he has not, defendant is entitled to judgment as a matter of law. *Kokinis*, 81 Ill. 2d at 154-55, 407 N.E.2d at 45. If "plaintiff has made out a *prima facie* case" (*Kokinis*, 81 Ill. 2d at 155, 407 N.E.2d at 45), then at the second stage the trial court views the case in the same manner as it would had defendant rested at the close of plaintiff's case (*Kokinis*, 81 Ill. 2d at 158, 407 N.E.2d at 46 (Ryan, J., specially concurring)). See also *People v. Hawkins*, 221 Ill. App. 3d 460, 464, 582 N.E.2d 243, 246 (1991). At the second stage, the court may enter judgment for defendant, or it may deny defendant's motion and allow defendant to put on his case.

■ In *People v. Orth*, 124 Ill. 2d 326, 530 N.E.2d 210 (1988), the supreme court was concerned, among other things, with the administrative burden on the State in rescission of summary suspension cases. "If every suspended motorist has a right to put the State to its proof, arresting officers and breathalyzer operators will be spending a great deal of their time and the State's money in court." *Orth*, 124 Ill. 2d at 336-37, 530 N.E.2d at 215. In *Orth*, the court concluded that the State was not required, to avoid rescission, to lay a foundation and move for the admission of the blood-alcohol test until the motorist had made a *prima facie* case. The motorist establishes a *prima facie* case that test results were unreliable by presenting evidence

"of any circumstance which tends to cast doubt on the test's accuracy, including, but not limited to, credible testimony by the motorist that he was not in fact under the influence of alcohol. We emphasize that this is not an invitation to commit perjury. Only if the trial judge finds such testimony credible will the burden shift to the State to lay a proper foundation for the admission of the test results." *Orth*, 124 Ill. 2d at 341, 530 N.E.2d at 217.

It could be argued that once the motorist presents the "credible testimony" referred to by *Orth* he has presented enough evidence to survive a motion under section 2—1110: that only at the *Kokinis* second stage does the court weigh evidence, and a court's finding under *Orth* that testimony is credible is enough to survive that second stage. That argument must be rejected. In a motion at the close of plaintiff's evidence under section 2—1110, the court is entitled to weigh plaintiff's credible evidence against the credible evidence presented by defendant. The fact that the motorist has presented some credible evidence in a rescission of summary suspension case does not require denial of the State's section 2—1110 motion.

The supreme court's statement in *Orth* that "[o]nly if the trial judge finds such testimony credible will the burden shift to the State" (*Orth*, 124 Ill. 2d at 341, 530 N.E.2d at 217) refers to the first stage, which *Kokinis* referred to as "whether the plaintiff has made out a *prima facie* case" (*Kokinis*, 81 Ill. 2d at 155, 407 N.E.2d at 45). If this were a case where the State relied on breathalyzer evidence, the motorist's credible testimony would have required the State to present its breathalyzer evidence and lay a foundation for that evidence, but the motorist's credible testimony is not sufficient to get him past a section 2—1110 motion. There is a difference between *Kokinis* and *Orth*. Under *Kokinis*, at the first stage the plaintiff was required only to present "at least some evidence on every element essential to his cause of action" (81 Ill. 2d at 154, 407 N.E.2d at 45), while under *Orth*, the trial judge has free rein to reject testimony which he does not find credible. The difference is that *Orth* established a special rule for rescission of summary suspension cases, and limited to the issue whether the State must lay a proper foundation for the admission of test results, justified by the administrative burden on the State of a contrary rule.

The trial court's ruling on a motion made under section 2—1110 will not be overturned unless it is against the manifest weight of the evidence. *Zannini v. Reliance Insurance Co. of Illinois, Inc.*, 147 Ill. 2d 437, 449, 590 N.E.2d 457, 462 (1992); *Hawkins*, 221 Ill. App. 3d at 463, 582 N.E.2d at 246.

■ In reaching his decision, the trial court judge commented that he had taken extensive notes and would reach his decision based upon the evidence presented by the witnesses. The trial court noted that defendant relied upon two conflicting theories. First, defendant presented evidence that he was able to move around without any difficulty, climbing underneath the truck to straighten out the bent tailpipe. Second, defendant argued that he had a stiff neck, and the officer should have taken defendant's injuries into account when evaluating the field-sobriety test. The court concluded that the stiff neck "is not consistent with the activities that you [(defendant)] are claiming occurred during this waiting period."

The trial judge noted that while Trello's testimony had probative value, it would have been enlightening had Trello testified about the field-sobriety test, but he did not. Field-sobriety tests are of some value in determining intoxication. Trello's testimony did not contradict the testimony of Officer Steil which was based on the tests. It is conceivable that if Trello had seen the tests, he would have agreed that defendant was intoxicated.

The trial court found that, following the field-sobriety tests, Officer Steil had reasonable grounds to arrest the defendant for DUI. While defendant presented some evidence that there were not reasonable grounds to suspect that he was under the influence of alcohol at the time of the accident, the trial court based its decision upon the credibility of the witnesses. Based upon this record, it is not clearly evident that the trial court should have reached the opposite conclusion. *Hawkins*, 221 Ill. App. 3d at 463, 582 N.E.2d at 246. The trial court's decision was not against the manifest weight of the evidence.

■ Defendant also argues that since Officer Steil could not give a meaningful definition of "under the influence of alcohol" as it relates to the arrest of defendant, Steil was relying upon a hunch or a mere suspicion when arresting defendant. At the hearing, defense counsel asked Steil the definition of "under the influence of alcohol." Steil responded, "Driving under the influence of alcohol .10 BAC or over. I'm not sure [of] the correct definition." He then elaborated, "I don't know the exact wording." The trial court rejected defendant's argument, noting that Steil did give a definition of "driving under the influence," but that it was not the definition defense counsel was seeking. The trial court, based upon Steil's testimony, concluded that, even as a trainee, Steil had a sufficient understanding as to the definition of "under the influence."

"Probable cause to arrest exists when facts exist that would lead a reasonable person standing in the shoes of the police officers to conclude that a crime has been committed and the defendant was the

person who committed the crime." *People v. Robinson*, 167 Ill. 2d 397, 405, 657 N.E.2d 1020, 1025 (1995). Officer Steil did in fact conclude that the crime of driving under the influence of alcohol had been committed. Probable cause does not depend upon the arresting officer's ability to recite the precise wording of the statute.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.