THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT MASSIE, Defendant-Appellant.

First District (1st Division)  No. 1—97—4394

Opinion filed June 1, 1999.

Robert G. Kaucky & Associates, of Berwyn (Robert G. Kaucky, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Jon J. Walters, and Anthony P. Garcia, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant, Robert A. Massie, appeals the trial court's denial of his petition to rescind the statutory summary suspension of his driving privileges following his arrest for driving under the influence of alcohol. On July 31, 1997, defendant filed a petition to rescind his statutory summary suspension. Defendant contends that the trial court erred in finding that: (1) his blood was tested in the ordinary course of emergency room medical care; (2) he was properly arrested under section 11—501 of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501 (West 1996)); (3) the arresting officer had reasonable grounds to believe that he was driving or in physical control of a motor vehicle while under the influence of alcohol; (4) the arresting officer properly warned him; (5) defendant's blood test revealed a blood-alcohol concentration (BAC) of .10 or more; and (6) the rescission hearing was held within 30 days after defendant filed his petition.

The question we address is what standards of admissibility must the State follow in order to lay the foundation for admitting evidence of blood test results when the State rebuts a *prima facie* case for rescission based on the unreliable results of a physician-ordered blood test. We hold that the State in a rescission hearing must comply with the standards of admissibility of section 11—501.2(a)(1) of the Code in order to lay the foundation for admitting the blood test results in evidence. 625 ILCS 5/11—501.2(a)(1) (West 1996).

We reverse the trial court's denial of defendant's petition to rescind because the foundational requirements for admitting the results of the blood test were not properly provided by the prosecution after defendant established a *prima facie* case of the unreliability of the results of the physician-ordered blood test. We therefore need not address defendant's five other issues on appeal.

## I. FACTS

At the rescission hearing, defendant testified that on June 27, 1997, at 8:30 p.m., he arrived at the emergency room of MacNeal Hospital in Berwyn after being involved in a motor vehicle accident. He received medical treatment, diagnostic tests, and a blood test. A woman swabbed his arm with alcohol, drew blood, and placed his blood into two vials. At the time of the blood test, there were no police officers present. Defendant testified that he was not under the influence of alcohol at the time he submitted to the blood test and that he had not consumed any alcohol for approximately three hours prior to operating a motor vehicle. Defendant admitted that he, in total, drank two shots of Kahlua at approximately 4 p.m.

Defendant testified that after the blood test, a police officer ar-

rived at the hospital. The police officer arrested him and although he had already submitted to a blood test, the officer gave him warnings about submitting to or refusing to submit to a chemical test. The officer also asked defendant to sign a release form, which defendant did. Defendant then consented to submit to a chemical test. Defendant, however, did not receive any additional chemical test. On cross-examination, defendant stated he sustained a head injury and was bleeding from the head as a result of the accident. Over objection on cross-examination, defendant testified that he was told that the blood test at the hospital revealed a BAC of over .24.

Defendant's mother, Wendy Massie, testified that between 10 p.m. and 10:15 p.m., she saw defendant at the MacNeal Hospital emergency room. She noticed that defendant had a head injury but did not witness any medical treatment given to defendant. Wendy Massie also testified that she saw a police officer arrive at the hospital and saw defendant sign something in front of the police officer. Wendy Massie did not smell any alcohol on defendant's breath and did not believe that defendant was under the influence of alcohol. The defendant then rested on the petition to rescind the statutory summary suspension. The State moved for a directed finding. After arguments, the trial court denied the State's motion for a directed finding on all grounds of defendant's petition.

The State called Berwyn police officer Thomas Skyrd. Officer Skyrd testified that around 7:45 p.m., he received a call about a car accident in Berwyn and went to the scene of the accident. Officer Skyrd observed two vehicles involved in the accident, a van and smaller car, which appeared to be a Honda. Officer Skyrd saw defendant walk toward the Honda and sit in the vehicle. Defendant was bleeding from his head. While sitting in the Honda, defendant told Officer Skyrd that he was sorry and that the accident was his fault because he was driving too fast. Officer Skyrd did not smell any alcohol on defendant's breath and noted that fact in his alcohol influence report. Officer Skyrd did not request defendant to perform any field sobriety tests and did not ask defendant to take a breathalyzer test. Officer Skyrd did not place defendant under arrest for driving under the influence of alcohol. Defendant was transported to the hospital, and Officer Skyrd remained at the accident scene to fill out reports.

Over defendant's hearsay objection, Officer Skyrd testified that Dr. Mallman of the MacNeal Hospital emergency room told him on the phone that, in his opinion, defendant appeared intoxicated. Dr. Mallman also stated that he had ordered a blood test. Officer Skyrd admitted that he was not present at the time of the blood test and he did not know the exact reason for the test. Officer Skyrd then proceeded to the hospital.

Although the defendant had submitted to the blood test before Officer Skyrd arrived, Officer Skyrd nonetheless read defendant a warning to motorist at 10:15 p.m. Defendant consented to submit to a chemical test; however, Officer Skyrd did not request defendant to submit to any additional tests. Officer Skyrd then received the results of defendant's physician-ordered blood test and gave notice to defendant of the summary suspension of his driving privileges.

## II. ANALYSIS

■ In a summary suspension proceeding, the motorist must show by a preponderance of the evidence that he is entitled to rescission. *People v. Scott*, 249 Ill. App. 3d 597, 600, 619 N.E.2d 809 (1993). The defendant has the burden of proof and only if the defendant establishes a *prima facie* case for rescission does the burden shift to the State to present evidence justifying the suspension. *People v. Smith*, 172 Ill. 2d 289, 295, 665 N.E.2d 1215 (1996). The trial court is responsible for weighing the evidence and judging the credibility of witnesses. *Smith*, 172 Ill. 2d at 295. On appeal, the trial court's decision will not be disturbed unless it is against the manifest weight of the evidence. *Smith*, 172 Ill. 2d at 295.

A. *Prima Facie* Case
■ Defendant argues that he is entitled to rescission because he sustained his burden of proof and established an unrebutted *prima facie* case that his blood-alcohol test result was not reliable. *People v. Orth*, 124 Ill. 2d 326, 336-37, 530 N.E.2d 210 (1988). A summary suspension hearing is a swift civil administrative procedure to address the status of a motorist's driving privileges as the result of an arrest for driving under the influence of alcohol or other chemical substance. *Orth*, 124 Ill. 2d at 336-37. Due to the nature of this proceeding, courts are reluctant to place too great a burden on the State in a rescission hearing. *People v. Wise*, 282 Ill. App. 3d 642, 646-47, 669 N.E.2d 128 (1996). Thus, only if the defendant establishes a *prima facie* case with credible evidence of the unreliability of a chemical test does the burden shift to the State to rebut the *prima facie* case. The State is then required to lay a foundation for the admission of the chemical test into evidence. *Orth*, 124 Ill. 2d at 341. The defendant's failure to present a *prima facie* case in support of rescission is grounds for the trial court to grant the prosecution's motion for a directed finding. *Wise*, 282 Ill. App. 3d at 646.

In *People v. Orth*, the supreme court discussed the type of evidence the motorist needs to present in a rescission hearing in order to establish a *prima facie* case that a test result was unreliable. "[S]uch evi-

dence may consist of any circumstance which tends to cast doubt on the test's accuracy, including, but not limited to, credible testimony by the motorist that he was not in fact under the influence of alcohol." *Orth*, 124 Ill. 2d at 341. The court further emphasized that the motorist's burden will only be satisfied if the trial court finds the motorist's testimony or evidence credible. *Orth*, 124 Ill. 2d at 341.

While *Orth* involved the reliability of the results of a breathalyzer test, its principles were applied to a blood test in *People v. Culpepper*, 254 Ill. App. 3d 215, 625 N.E.2d 868 (1993). In that case, the defendant testified that she had two alcoholic drinks prior to being in a car accident. *Culpepper*, 254 Ill. App. 3d at 217. In the ambulance, defendant received an intravenous injection and oxygen. At the hospital, the arresting officer requested a blood test, which, according to the officer's sworn report, revealed a .17 BAC. *Culpepper*, 254 Ill. App. 3d at 218. At the rescission hearing, the defendant challenged the reliability of the blood test by testifying that she was not intoxicated and that the results were unreliable due to the intravenous injection. At the close of the defendant's case, the trial court denied the State's motion for a directed finding. The State then offered no foundation for admission of the blood test into evidence to rebut defendant's *prima facie* case. The trial court granted the defendant's petition for rescission. *Culpepper*, 254 Ill. App. 3d at 219.

The appellate court affirmed the trial court's ruling. Relying on *Orth*, the court in *Culpepper* held that once a motorist establishes a *prima facie* case that a blood test submitted to was unreliable, the State is required to follow the standards of admissibility provided for by section 11—501.2(a)(1) of the Code. 625 ILCS 5/11—501.2(a)(1) (West 1996). The court found that defendant established a *prima facie* case that the blood test was unreliable and the burden shifted to the State to prove the reliability of the test, which the State failed to do. *Culpepper*, 254 Ill. App. 3d at 223-24.

■ The State in this case contends that it was not required to lay the foundation to admit the results of defendant's blood-alcohol test because the defendant failed to establish a *prima facie* case. Neither the evidence nor the statements of the trial judge support this conclusion. The defendant presented credible evidence beyond mere denial to establish a *prima facie* case of an unreliable test result. Defendant testified that he was not under the influence of alcohol when he submitted to a blood test and that he had not consumed any alcohol for approximately three hours prior to operating a motor vehicle. Furthermore, defendant's mother corroborated defendant's testimony that he was not under the influence of alcohol. Defendant's mother testified that she did not smell any alcohol on defendant's breath.

In addition, the reliability of the blood test result was questionable because the individual administering the blood test used alcohol on defendant's arm before drawing blood. Moreover, the police officer responding to the scene of the accident did not place defendant under arrest at that time, but only later arrested defendant at the hospital. Thus, the record reflects that defendant presented credible evidence that his blood test was unreliable. *Culpepper*, 254 Ill. App. 3d at 223-24.

The record further reflects no indication from the trial court that the defendant failed to make a *prima facie* case. In response to the State's motion for a directed finding at the close of defendant's case after hearing extensive argument, the following exchange occurred between the trial court and the State:

"THE COURT: Motion for directed finding is denied at this time. Call your next witness.

THE STATE: Is the directed finding directed to all parts of the petition or any part?

THE COURT: I am denying the motion on all parts."

The State then called only one witness, Officer Skyrd. After hearing all of the evidence, but before the final ruling denying the petition to rescind, the trial court made the following comments regarding the credibility of defendant's evidence: "I would like to note at the outset here that the Petitioner's petition to rescind the statutory summary suspension is not a criminal procedure, it is considered to be a civil procedure, and the Petitioner has met that requirement as required by law to establish by a preponderance of credible evidence his entitlement to a rescission of the statutory summary suspension."

The record supports the conclusion that the trial court properly denied the State's motion for a directed finding. There is no indication from the record that the trial court in denying the prosecution's motion for a directed finding concluded that defendant failed to make a *prima facie* case. The evidence and the record support the opposite conclusion. Therefore, upon denial of the State's motion, the burden shifted to the State to show the validity of the blood test results. *Culpepper*, 254 Ill. App. 3d at 222. The State was then required to lay a foundation for admitting into evidence defendant's blood test results in order to rebut the defendant's *prima facie* case and to avoid rescission. *Orth*, 124 Ill. 2d at 340.

B. Standards of Admissibility

■ We next address what standards of admissibility the State is required to follow in order to admit a blood test result into evidence at a civil rescission hearing. If the chemical test used is a breathalyzer,

then the evidentiary foundation requirements of section 11—501.2(a)(1) of the Code clearly govern. *Orth*, 124 Ill. 2d at 340. We likewise conclude if the chemical test used is a physician-ordered blood test then the evidentiary foundation requirements of section 11—501.2(a)(1) of the Code also govern. Section 11—501.2(a)(1) of the Code (625 ILCS 5/11—501.2(a)(1) (West 1996)) provides a specific admissibility standard for a chemical test used to determine a motorist's blood-alcohol concentration in any civil action or in any proceeding arising out of an arrest for a violation of section 11—501 of the Code. It states, in pertinent part:

"(a) Upon the trial of any civil or criminal action or proceeding arising out of an arrest for an offense defined in Section 11—501 or a similar local ordinance or proceedings pursuant to Section 2—118.1, evidence of the concentration of alcohol, other drug or combination thereof in a person's blood or breath at the time alleged, as determined by the analysis of the person's blood, urine, breath or other bodily substance, shall be admissible. Where such test is made the following provisions shall apply:

1. Chemical analyses of the person's blood, urine, breath, or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police by a licensed physician, registered nurse, trained phlebotomist acting under the direction of a licensed physician, certified paramedic, or other individual possessing a valid permit issued by that Department for this purpose. The Illinois Department of Public Health shall prescribe regulations as necessary to implement this Section." 625 ILCS 5/11—501.2(a)(1) (West 1996).

A statutory summary suspension hearing as governed by section 2—118.1 of the Code is a civil action arising out of an arrest for an offense defined in section 11—501 of the Code; therefore, section 11—501.2 of the Code provides the admissibility requirements for blood test results offered into evidence at a rescission hearing. The application of section 11—501.2 to statutory summary suspension proceedings pursuant to section 2—118.1 is specifically referenced in subsection (a) of section 11—501.2 (625 ILCS 5/11—501.2(a)(1) (West 1996)). *Orth*, 124 Ill. 2d at 341; *Culpepper*, 254 Ill. App. 3d at 223-24.

The State argues that the Department of Health standards apply only when a police officer requests the defendant to take a blood-alcohol test. Both the language of section 11—501.2 and the regulations promulgated by the Illinois Department of Public Health to implement this section under section 77 of the Illinois Administrative

Code indicate that the admissibility standards of section 11—501.2 apply to chemical tests taken pursuant to the request of a law enforcement officer. See 625 ILCS 5/11—501.2(a)(2), (a)(3), (a)(4) (West 1996); 77 Ill. Adm. Code § 510.10(a) (eff. June 1, 1995). Although subsection (1) of section 11—501.2(a) does not refer to a chemical test taken at the request of a law enforcement officer, subsections (2), (3) and (4) all detail specific standards to be followed when a law enforcement officer requests either a "blood test" or a "chemical test." 625 ILCS 5/11—501.2(a) (West 1996). Moreover, the Department of Public Health regulations provide that the blood sample shall be collected according to its procedures "[w]hen a person is arrested and the arresting officer requests a blood test to determine the amount of blood alcohol or other drugs present." 77 Ill. Adm. Code § 510.10(a) (eff. June 1, 1995).

Nevertheless, in *People v. Emrich*, 113 Ill. 2d 343, 351, 498 N.E.2d 1140 (1986), our supreme court rejected the argument that the admissibility standards of section 11—501.2(a) of the Code apply only when a blood test is taken at the request of a law enforcement officer. Rather, the court noted that section 11—501.2(a)(1) directs that, for a chemical analysis to be admitted by the State into evidence, it must comply with the Department of Public Health standards. *Emrich*, 113 Ill. 2d at 351; 625 ILCS 5/11—501.2(a)(1) (West 1996). The court stated:

> "To restrict the application of the standards [of section 11—501.2(a)] to analyses performed at the express request of the police would undercut the legislative policy of ensuring the reliability of all chemical analyses introduced against defendants in DUI cases." *Emrich*, 113 Ill. 2d at 351.

While *Emrich* involved the admissibility standards in a criminal prosecution for driving under the influence of alcohol, the supreme court in *Orth* confirmed the fact that admissibility standards under section 11—501.2(a)(1) apply to a summary suspension hearing. The court in *Orth* held that to admit the results of a breathalyzer test into evidence at a rescission hearing, the foundation requirements of section 11—501.2(a)(1) must be followed. *Orth*, 124 Ill. 2d at 341. Likewise, in *Culpepper*, the court concluded that the standards of section 11—501.2(a)(1) apply to the admission of a blood test in a rescission hearing. *Culpepper*, 254 Ill. App. 3d at 224. Therefore, the language of section 11—501.2(a)(1) of the Code, the supreme court's holdings in *Orth* and *Emrich*, and the appellate court's holding in *Culpepper* support the conclusion that the State must comply with the standards of admissibility of section 11—501.2(a)(1) of the Code in order to admit the results of a blood test into evidence in a hearing on a petition to rescind a statutory summary suspension.

We further note that a blood test, unlike a breathalyzer test, will

not necessarily always be conducted at the request of a law enforcement officer but may be given as part of medical treatment or in the course of emergency room care. The State in fact cites section 11—501.4 of the Code and argues that, under this section, a blood test, conducted in the regular course of providing emergency medical treatment, is admissible. 625 ILCS 5/11—501.4 (West 1996).

■ There are two reasons why in this case that argument is faulty. First, section 11—501.4 does not apply to a rescission hearing and, second, even if it did apply, the State failed in this case to comply with the foundation requirements under that section for purposes of admitting into evidence the results of defendant's blood-alcohol test. The foundation requirements for admitting into evidence the results of a blood test pursuant to section 11—501.4 of the Code apply *"only in prosecutions"* for any violations of section 11—501 of the Code, similar local provisions, or in prosecutions of reckless homicide. (Emphasis added.) 625 ILCS 5/11—501.4(a) (West 1996). The statutory language, therefore, specifically limits the admissibility standards of section 11—501.4 to criminal prosecutions, and does not apply to civil statutory summary suspension hearings. *People v. Solis*, 221 Ill. App. 3d 750, 752, 583 N.E.2d 26 (1991).

The State's reliance on *People v. Yant*, 210 Ill. App. 3d 961, 570 N.E.2d 3 (1991), and *People v. Ethridge*, 243 Ill. App. 3d 446, 610 N.E.2d 1305 (1993), as support for applying the admissibility standards of section 11—501.4 to the rescission hearing in this case is not persuasive. In this case, unlike *Yant* or *Ethridge*, the State is required to admit into evidence the results of a blood test in a civil rescission hearing in order to refute the defendant's *prima facie* case that the blood test results were unreliable. In *Yant*, the court held that a blood test taken without a motorist's consent is admissible in a driving under the influence prosecution because the blood test was administered under medical order of a treating emergency physician and complied with the provisions of section 11—501.4(a). *Yant*, 210 Ill. App. 3d at 964-65; 625 ILCS 5/11—501.4(a) (West 1996). Unlike *Yant*, which involved a criminal prosecution for DUI, this case involves a civil hearing on a petition to rescind a statutory summary suspension. The *Yant* court did not extend the admissibility standards of section 11—501.4 to a civil rescission hearing. 625 ILCS 5/11—501.4 (West 1996).

Similarly, in *People v. Ethridge*, the defendant challenged the admissibility of a blood test in a criminal prosecution for reckless homicide. The court found that the requirements of section 11—501.4 of the Code were complied with because hospital personnel testified to the procedures that they used in the handling and testing of

defendant's blood. *Ethridge*, 243 Ill. App. 3d at 464. While a variety of medical witnesses testified as to the testing procedures in Ethridge, not one witness in this case testified as to any procedures used in the handling and testing of defendant's blood. Moreover, the court in *Ethridge* did not discuss whether the admissibility standards under section 11—501.4 applied to a civil rescission hearing. Neither statutory language nor case law supports the conclusion that the admissibility standards of section 11—501.4 apply to a civil rescission hearing. 625 ILCS 5/11—501.4 (West 1996).

Even if the standards of section 11—501.4 did apply to the rescission hearing in this case, the State failed to comply with these standards. Those standards provide that the results of blood-alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule when certain criteria are met. 625 ILCS 5/11—501.4(a) (West 1996). When laying a proper foundation for the admission of business records, it is not necessary that the maker of the records testify or that the maker of the records be shown to be unavailable, nor is it necessary that the custodian of the records testify. *Raither v. Dustcutter, Inc.* 261 Ill. App. 3d 904, 909, 634 N.E.2d 1163 (1994). What is required is that someone familiar with the business and its mode of operation testify at trial as to the manner in which the record was prepared. The evidence must establish that the record was made as a memorandum or record of the act, the record was made in the regular course of business and it was the regular course of business to make such a record at the time of the act or within a reasonable time thereafter. *People v. Tsombanidis*, 235 Ill. App. 3d 823, 833, 601 N.E.2d 1124 (1992). Therefore, anyone familiar with the business and its procedures may testify as to business records, and the original entrant need not be a witness; compliance with the foundation requirements provides the indicia of reliability necessary for admission of the record. *People v. Morrow*, 256 Ill. App. 3d 392, 397, 628 N.E.2d 550 (1993).

The prosecution did not provide a foundation for admitting the blood test result under the business record exception to the hearsay rule or under the specific criteria provided by subsections (a)(1), (a)(2) and (a)(3) of section 11—501.4. 625 ILCS 5/11—501.4(a)(1), (a)(2), (a)(3) (West 1996). At one point, the prosecution indicated it was seeking a continuance in order to bring in the nurse from the hospital to testify regarding the blood test results. Following two continuances requested by the State, the trial court conducted the rescission hearing. The State, however, did not call the nurse or any other medical witnesses regarding defendant's blood test results. There was no

foundation testimony from anyone affiliated with the hospital or the laboratory or anyone familiar with the operations of the hospital or the laboratory. There was no evidence that the record of the blood test result was made during the regular course of the business or that it was the regular course of the business to make such a record contemporaneously with the event recorded or within a reasonable time thereafter. No hospital personnel testified to the procedures that they used in the handling and testing of defendant's blood. The record contains no evidence that the State complied with the evidentiary requirements regarding the proper foundation for admitting the blood test results under the business record exception to the hearsay rule and the criteria of section 11—501.4. 625 ILCS 5/11—501.4 (West 1996).

We recognize that if section 11—501.4 applied to summary rescission hearings, the State's burden to rebut a *prima facie* case in the context of a physician-ordered blood test would be substantially reduced from the requirements as set forth in section 11—501.2. Essentially, the business record foundation would replace the much more detailed foundation required by application of the Department of Public Health standards under section 11—501.2(a)(1) of the Code. See 77 Ill. Adm. Code § 510.10(a) (eff. June 1, 1995); 625 ILCS 5/11—501.2(a)(1) (West 1996).

The legislature, however, has chosen to limit application of section 11—501.4 to criminal prosecutions, and we are bound by the language of the Code. 625 ILCS 5/11—501.4 (West 1996). The language of section 11—501.4(a) is clear in limiting the admission into evidence of chemical tests of blood conducted in the regular course of providing emergency medical treatment as a business record exception to the hearsay rule, "only in prosecutions for any violation of Section 11—501 of this Code or a similar provision of a local ordinance, or in prosecutions for reckless homicides brought under the Criminal Code of 1961" (625 ILCS 5/11—501.4(a) (West 1996)).

Neither the language of section 11—501.4 nor case law supports the conclusion that this statute applies to a civil rescission hearing to determine whether the suspension of a motorist's driving privileges should be rescinded. We therefore reject the State's argument that because a motorist's blood test was taken in the course of providing emergency medical treatment, the results are admissible in evidence as a business record exception to the hearsay rule under section 11—501.4 of the Code in a civil statutory summary suspension rescission hearing. 625 ILCS 5/11—501.4 (West 1996). Whether section 11—501.4 should be modified to include summary suspension hearings is an issue for the legislature to decide.

In this case, the trial court ruled that because the test of defendant's blood was made by the emergency room physician in the course of his treatment of the defendant, the Department of Public Health standards did not apply. The trial court relied on *Cuellar v. Hout*, 168 Ill. App. 3d 416, 522 N.E.2d 322 (1988), to support that conclusion. However, *Cuellar* is inapplicable because it addresses the standards of admissibility for a blood-alcohol test in a personal injury case, not in a rescission hearing. In *Cuellar*, the court concluded that, "[s]ince this is not a prosecution for driving under the influence and section 11—501.2(a) of the Illinois Vehicle Code does not apply, the ordinary standards of admissibility apply to the evidence of the blood-alcohol test." *Cuellar*, 168 Ill. App. 3d at 420.

The Illinois Vehicle Code governs both the suspension of a motorist's driving privileges following an arrest for driving under the influence of alcohol and the civil proceeding whereby the motorist petitions to rescind the suspension. 625 ILCS 5/11—501.1 (West 1996); *Orth*, 124 Ill. 2d at 339-40. Consequently, the trial court's ruling that section 11—501.2 of the Code and the Department of Public Health standards did not apply in the rescission hearing was error.

Moreover, unlike *Cuellar*, where a proper foundation was provided for introducing into evidence the blood test results under the ordinary standards of admissibility governing a civil case, the State in this case failed to provide any evidentiary foundation to admit the results of defendant's blood-alcohol test. As previously discussed, the State failed to comply with the business record admissibility standards under section 11—501.4. 625 ILCS 5/11—501.4 (West 1996). Additionally, the State also failed to comply with the more stringent Department of Public Health standards under section 11—501.2(a)(1) or the ordinary standards of admissibility under civil rules of evidence. 625 ILCS 5/11—501.2(a)(1) (West 1996).

Neither Officer Skyrd nor any other witness ever testified to the procedures used in testing defendant's blood or whether the blood test complied with the Department of Public Health standards. In fact, Officer Skyrd admitted that he was not familiar with the Department of Public Health standards concerning blood tests. He did not know if any of the Public Health Standards were followed. He did not know how the blood was taken, what was done with the defendant's blood, who had access to it or where it went. The State also did not call any personnel from MacNeal Hospital to provide a foundation for the blood test results according to the ordinary standards of admissibility under the civil rules of evidence.

In this case, evidence of defendant's blood test results was introduced by the State at two different points during the rescission

hearing. First, on cross-examination of the defendant, over defense objection, the prosecution elicited that the defendant was told the results of his blood test. The State never established who told defendant the results of his blood test. Second, in the prosecution's case, Officer Skyrd testified he received the results of defendant's blood test. The State never established who gave Officer Skyrd the results of defendant's blood test. That was the extent of the evidence offered by the State regarding defendant's blood-alcohol test results. The source of this hearsay information was not elicited by the prosecution from either the defendant or Officer Skyrd. The source of this hearsay information was not produced by the State and never subjected to cross-examination. This hearsay evidence did not rebut defendant's *prima facie* case and, therefore, the trial court's denial of defendant's petition to rescind his statutory summary suspension was against the manifest weight of the evidence.

■ We hold that once the motorist has established a *prima facie* case at a rescission hearing and the burden has shifted to the State on the issue of the reliability of a blood test result, the State must lay a foundation for introducing into evidence the blood test results by complying with the admissibility requirements under section 11—501.2(a)(1) of the Code and thereby demonstrate that the chemical analysis of the blood was performed "according to standards promulgated by the Department of Public Health" (625 ILCS 5/11—501.2(a)(1) (West 1996)). *Culpepper*, 254 Ill. App. 3d 224; *Emrich*, 113 Ill. 2d at 351: *Orth*, 124 Ill. 2d at 341.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County denying defendant's petition to rescind the statutory summary suspension of defendant's driving privileges is reversed.

Reversed.

TULLY and GALLAGHER, JJ., concur.