THE VILLAGE OF LINCOLNSHIRE, Plaintiff-Appellant, v. JAMES FOLLENSBEE, Defendant-Appellee.

Second District   No. 2—99—1057

Opinion filed December 1, 2000.

Lawrence R. LaLuzerne, of Rosing, Smith, Ericksen, Zeit & Stanczak, Ltd., of Waukegan, for appellant.

Michael M. Melius, of Waukegan, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, James Follensbee, was arrested for the offense of driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 1998)). He subsequently filed a petition to rescind the statutory summary suspension of his driving privileges, alleging that he did not refuse to consent to take a breath test or a blood test. Following a hearing, the trial court granted defendant's petition. Plaintiff, the Village of Lincolnshire, appeals the trial court's order granting defendant's petition. We affirm.

The record reflects that, on April 24, 1999, at approximately 12:49 a.m., defendant was stopped by Officer Gary Wrzesinski of the Lincolnshire police department for speeding and improper lane usage. He was arrested and taken to the police department for the offense of driving under the influence of alcohol. Defendant agreed to take a breath test. At 2:03 a.m., defendant blew into the breathing apparatus, which registered "mouth alcohol," and the apparatus printed out that test result. The officer recycled the breathing apparatus, replaced the mouthpiece, and waited an additional 20 minutes before offering the test to defendant again.

At 2:36 a.m., defendant blew into the breathing apparatus; the printout showed the result of "test refused." The officer noted that defendant almost blew hard enough for the instrument to register a result but not before the instrument indicated "test refused." During the test defendant lost consciousness and struck his head on a counter. Paramedics were called to tend to defendant.

Defendant informed the paramedics that he did not want to be transported to the hospital. Officer Wrzesinski asked defendant to submit to another breath test. The officer replaced the mouthpiece. At 3:22 a.m., defendant blew into the breathing apparatus, but the result printed out as "test refused."

Officer Wrzesinski asked defendant to go to Highland Park Hospital to take a blood test; defendant agreed to do so. The officer drove defendant to the hospital and took him to the admissions desk. He saw hospital personnel give defendant a form to sign and watched defendant cross out the release-of-liability language on the form. Officer Wrzesinski heard the nurse in charge of the emergency room advise defendant that they would not draw blood or take a urine sample from him if he did not sign the form as it was prepared.

Paragraph 6 of the hospital's consent for emergency treatment and disclosure statement states:

> "I realize that there are certain priorities which must be followed in rendering care and treatment of persons in the Emergency Department. Further, I understand that under certain cir-

cumstances, patients who experience more serious medical conditions than mine may be given higher priority. Therefore, I release HIGHLAND PARK HOSPITAL and its officers and directors, the Emergency Department Physician and his designee, for all other damages, losses or liability which may result by reasons of the exercise of reasonable judgment in establishing priorities of treatment among two or more patients receiving treatment in the Emergency Department."

Officer Wrzesinski informed defendant that, if he did not sign the hospital form in its entirety, it would be recorded as a refusal to submit to the chemical test. Defendant replied that he was not refusing to take the test; he was simply unwilling to sign the form provided by the hospital that included the release of liability. Defendant again stated that he would not sign the form, citing a fear of AIDS and a fear of releasing the hospital from liability. Officer Wrzesinski retrieved the form and thereafter completed the "Law Enforcement Sworn Report" indicating that defendant refused to take all requested chemical tests. The Secretary of State suspended defendant's driving privileges, and defendant petitioned the trial court for a rescission of the statutory summary suspension.

Following the hearing, the trial court found that, according to defendant's testimony, he attempted on seven occasions to take a breath test, and according to the officer's testimony, defendant made at least three attempts to take the breath test. The trial court noted that a number of mouthpieces were used and that defendant was trying to blow into the breath machine. However, on the second or fifth test, defendant lost consciousness, and the officer called paramedics. The trial court further found that defendant expressed consent to take a blood test at the hospital. The trial court ruled that the defendant's refusal to execute the Highland Park Hospital consent for emergency treatment and disclosure form without being allowed to strike the liability lines in paragraph 6 was not a refusal to submit to and complete the requested blood test. The trial court granted defendant's petition to rescind the statutory summary suspension.

On August 20, 1999, the trial court denied plaintiff's motion to reconsider. Plaintiff timely appeals.

■ In a summary suspension proceeding, the motorist must show by a preponderance of the evidence that she or he is entitled to rescission. *People v. Massie*, 305 Ill. App. 3d 550, 554 (1999). The trial court is responsible for weighing the evidence and judging the credibility of the witnesses. *Massie*, 305 Ill. App. 3d at 554, citing *People v. Smith*, 172 Ill. 2d 289, 295 (1996). A trial court's decision to grant a petition to rescind a motorist's statutory summary suspension of her or his

driving privileges will not be reversed on appeal unless it is against the manifest weight of the evidence. *People v. Estrada*, 313 Ill. App. 3d 245, 248 (2000).

■ Section 11—501.1 of the Illinois Vehicle Code provides, in relevant part:

> "(a) Any person who drives *** a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine for the purpose of determining the content of alcohol, other drug or drugs, *** or any combination thereof in the person's blood if arrested, as evidenced by the issuance of a Uniform Traffic Ticket, for any offense as defined in Section 11—501 ***. The test or tests shall be administered at the direction of the arresting officer. The law enforcement agency employing the officer shall designate which of the aforesaid tests shall be administered. ***
> ***
>
> (c) A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of such person's privilege to operate a motor vehicle as provided in Section 6—208.1 of this Code." 625 ILCS 5/11—501.1(a), (c) (West 1998).

On appeal, plaintiff argues that defendant would only submit to a blood test if he could sign the consent for medical treatment with certain language deleted from the form despite being told that his conduct would be considered a refusal if he did not sign the form as requested. Plaintiff contends that the trial court's decision was against the manifest weight of the evidence because defendant's conduct constituted a refusal to take the chemical test requested by the officer. Plaintiff cites to *Village of Cary v. Jakubek*, 121 Ill. App. 3d 341 (1984), and *People v. Krosse*, 262 Ill. App. 3d 509 (1994), for the proposition that, when a person will not submit to a chemical test unless a condition he or she sets is met, that conduct constitutes a refusal to submit to that test.

In *Jakubek*, the defendant refused to take a breathalyzer test until he was allowed to consult with his attorney. *Jakubek*, 121 Ill. App. 3d at 342-43. In *Krosse*, the defendant agreed to a blood test only if someone other than the arresting officer transported him to the hospital. *Krosse*, 262 Ill. App. 3d at 511. In the present case, we find that the conditions at issue were set by the hospital and not defendant; therefore, *Jakubek* and *Krosse* are distinguishable. Defendant presented himself at the hospital for the purpose of having his blood drawn. The hospital refused to administer the test unless its conditions were met, one of those being a release of liability.

This fact pattern presents an issue of first impression. We are persuaded by cases in other jurisdictions holding that the implied consent statutes do not require a driver, as a condition of consenting to a chemical test, to execute a document limiting or waiving the tester's liability. See *State v. Pineau*, 491 A.2d 1165, 1169 (Me. 1985) (stating that "the statute mandating a blood test requires submission to the test and nothing more"); *Sickman v. Commonwealth*, 79 Pa. Commw. 173, 468 A.2d 909 (1983) (concluding that the refusal to submit to a procedure that contains requirements in addition to that of the actual test is not a refusal to take such a test); *Maffei v. Commonwealth of Pennsylvania Department of Transportation*, 53 Pa. Commw. 182, 416 A.2d 1167 (1980).

In *Maffei*, the defendant was arrested for driving under the influence of alcohol. Pursuant to the officer's request, the defendant agreed to submit to a blood test. While at the hospital, the defendant was asked to sign a consent form that also released the hospital from liability. The defendant refused to sign the consent form, citing a fear of contracting a disease. The lower court ordered the defendant's driver's license to be suspended, and the defendant appealed. The reviewing court reversed, examining its state's vehicle code and noting that its vehicle code did not require a motorist, as part of consenting to a blood test, to execute a document limiting or waiving the tester's liability. *Maffei*, 53 Pa. Commw. at 184-85, 416 A.2d at 1169.

■ Requiring a motorist to sign a form limiting or waiving liability, of whatever nature, to consent to chemical testing is beyond the parameters of the implied consent statute, which does not require a motorist to complete any pretesting procedures. Thus, a motorist's failure to sign a hospital consent form that limits or waives liability for the hospital is not a *per se* refusal to consent to chemical testing. In the present case, defendant's refusal related solely to the form. The record reflects that he gave an unqualified, unequivocal assent to the test itself. Even after he refused to sign the consent form, defendant restated his agreement to submit to the test. A statutory summary suspension is a sanction for the refusal to submit to a chemical test and not a sanction for the refusal of a test linked with the execution of a release. See *Maffei*, 53 Pa. Commw. at 185, 416 A.2d at 1169. Section 11—501.1 of the Illinois Vehicle Code does not require a motorist to take a test and at the same time execute a release for all potential liability. We therefore conclude that defendant did not refuse the blood test when he refused to sign the hospital consent form that included a waiver of liability.

The two other cases plaintiff cites are also easily distinguishable. In *Commonwealth of Pennsylvania, Department of Transportation*,

*Bureau of Driver Licensing v. Miller*, 155 Pa. Commw. 564, 625 A.2d 755 (1993), the hospital agreed to strike the release-of-liability language, but the defendant refused to sign the consent form because he subsequently conditioned his consent upon the hospital's affirmatively assuming liability for his care and further requested that the director of the hospital initial the form. In *Selan v. Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety*, 108 Pa. Commw. 36, 529 A.2d 65 (1987), the form was simply a consent form to take the blood test and did not include any type of release of hospital liability.

Because we find that defendant's refusal to sign a hospital form releasing the hospital from liability was not a refusal to take a chemical test, we hold that the trial court's judgment was not against the manifest weight of the evidence.

Therefore, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN, P.J., and GALASSO, J., concur.