Rule 23 Order filed
 NO. 5-02-0822

July 8, 2004;

Motion to publish granted
 IN THE

August 17, 2004.

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the 

)  Circuit Court

Plaintiff-Appellee, )  of Wabash County.

)

v. )  Nos. 02-CF-14, 02-CM-20, & 02-DT-12

)

STEPHEN J. TIBBETTS, )  Honorable

)  James V. Hill, 

Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:  

The defendant, Stephen Tibbetts, was charged with driving a vehicle while under the influence of alcohol (DUI) pursuant to section 11-501(d)(1) of the Illinois Vehicle Code (625 ILCS 5/11-501(d)(1) (West 2000)) and with the unlawful possession of drug paraphernalia and cannabis (720 ILCS 600/3.5 (West 2000); 720 ILCS 550/4(a) (West 2000)).  As a third-time DUI offender, Tibbetts' driver's license was suspended in accordance with section 11-501.1 of the Illinois Vehicle Code (625 ILCS 5/11-501.1 (West 2000)) for a minimum of three years.  In his amended petition to rescind the statutory summary suspension of his driver's license, Tibbetts claims that his arrest was improper, that the officer had no reasonable grounds to believe he was driving under the influence, and that he was not given proper warnings.  He further claims that he did not refuse to submit to chemical testing because he agreed to a breath test and was physically and medically unable to submit to a blood test.  After two hearings, Tibbetts rested his case and the State moved for a judgment under section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2002)).  The trial court found that Tibbetts had failed to establish a 
prima facie
 case, and the court dismissed his amended petition.  Tibbetts appeals.  

I. BACKGROUND

Tibbetts and the arresting officer, Deputy Keeling, testified in Tibbetts' case in chief at the hearings before the trial court.  A videotape of the booking process was viewed by all the parties at the beginning of the first hearing.  This video was not made a part of the record on appeal, and testimony at the hearings regarding the content of the video is confusing at best.  The following relevant evidence was adduced.  On the day of his arrest, Tibbetts, a carpenter, was driving from Crossville to Lawrenceville and needed to use the restroom.  He pulled off the road and relieved himself.  He backed his van into a ditch as he attempted to turn around.  Tibbetts admitted that he had consumed three beers during the day.  A cold open can of beer was found in the van when Deputy Keeling arrived, as was cannabis and cannabis paraphernalia.  A number of empty cans were found on the floor of the van.  Keeling smelled alcohol on Tibbetts' breath and observed that his speech was slurred and his eyes were bloodshot.  He administered field sobriety tests consisting of the one-leg stand and the eye nystagmus test followed by a portable breath test (PBT).

Keeling testified that it was obvious to him from the beginning of their encounter that Tibbetts had been drinking.  Tibbetts also did not do well on the field sobriety tests.  The results of the PBT indicated that Tibbetts' blood-alcohol level exceeded .08.  Keeling testified that they did not discuss types of testing at the scene and that he did not tell Tibbetts on the drive to the jail that he would administer a breath test upon their arrival.  Keeling testified that deputies are given the discretion to administer whatever test they choose but that it is his personal policy to ask for a blood test if he finds drugs in the vehicle and to ask for a breath test if only alcohol use is suspected.  Keeling decided to ask for a blood test when he found cannabis in Tibbetts' van.  According to Keeling, Tibbetts never told him that he was afraid of blood tests.  Keeling administered warnings to Tibbetts and informed him of his 
Miranda
 rights (
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)), but he testified that he did not tell Tibbetts that he could consult with an attorney regarding the blood test.  

Tibbetts testified that Keeling told him in the patrol car en route to the jail that he would give him a breath test at the jail and did offer him a breath test upon their arrival.  However, one was never administered.  He also testified that after they reached the jail, Keeling asked him to submit to a blood test, which he refused because he has "had a problem with blood tests" for years.  Tibbetts claimed that when he was 12 or 13 years old, he saw a dead man in a park with a needle hanging out of his arm; he testified that he did not realize the extent of the impact of this experience until 1975, when he was required to donate blood as part of his wife's hospitalization.  He testified that he got very excited, passed out, and was unconscious for about 10 minutes.  He testified that the combination of having a needle in his arm and the drawing of blood causes him fear and trauma and that he had explained his fear to Keeling.  

It is not clear from the record to what extent the video reflected Tibbetts informing Keeling of his fear, if at all.  Further, the record does not clearly reflect whether Tibbetts initially consented to a blood test.  However, it appears through testimony about the video from Tibbetts and Keeling that Tibbetts initially consented to a blood test and then changed his mind.  Tibbetts did not put on any medical testimony or offer any other corroborating witnesses regarding his fear of blood tests.  He also testified that he had not obtained any treatment or counseling for his fear.  There was no testimony in the record that indicated that it was physically or psychologically impossible for Tibbetts to give blood.  

At the conclusion of the hearing, the trial court noted the absence in the record of evidence supporting Tibbetts' statutory allegations and held that he failed to make a 
prima facie
 case regarding those specific paragraphs.  The trial judge further found that it was uncontroverted that Keeling had the authority and discretion to request any test he wanted and that once Keeling found cannabis in the car, it was reasonable for him to suspect drug use and to therefore request a blood test.  The trial court further noted the absence of any medical testimony showing that it was physically or psychologically impossible for Tibbetts to take a blood test, and the court recognized that the only evidence of such an impairment was Tibbetts' own self-serving statement that he had been traumatized as a young man and was afraid of needles and blood.  The trial court found that he clearly and unequivocally refused the blood test.  Thus, the trial court held that Tibbetts failed to make a 
prima facie
 case for rescission.  A written order was subsequently entered dismissing Tibbetts' amended petition to rescind the statutory summary suspension of his license.  

II. ANALYSIS

Tibbetts advances three arguments on appeal.  He contends (1) that the trial court erred in finding that he failed to establish a 
prima facie
 case for rescission, (2) that the officer's request for a blood test was unreasonable and violated Tibbetts' constitutional rights, and (3) that section 11-501.1 of the Illinois Vehicle Code (625 ILCS 5/11-501.1 (West 2000)) is unconstitutionally vague.  We disagree with Tibbetts on all three points and affirm the trial court's order dismissing his amended petition.

Tibbetts and the State vigorously disagree on the standard of review we must apply, as well as the standard the trial court was required to apply in ruling on the State's motion for a judgment.  These matters merit our discussion before we address Tibbetts' points on appeal.  We recognize that there is some authority for 
de novo
 review on appeals from rulings on motions made under section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2002)).  Had the trial court ruled as a matter of law that Tibbetts failed to make a 
prima facie
 case, 
de novo
 review would have been appropriate.  However, the trial court in this case did not rule as a matter of law; rather, the judge considered the credibility of the witnesses and the weight and quality of the conflicting evidence presented by Tibbetts.  Therefore, we find that a more deferential standard is appropriate in this case.  We will not reverse a trial court's ruling on a motion for a judgment in a nonjury case made under section 2-1110 of the Code of Civil Procedure unless it is against the manifest weight of the evidence.  
People v. Wise
, 282 Ill. App. 3d 642, 647, 669 N.E.2d 128, 132 (1996); 
People v. Orth
, 124 Ill. 2d 326, 341, 530 N.E.2d 210, 217 (1988); 
Kokinis v. Kotrich
, 81 Ill. 2d 151, 154, 407 N.E.2d 43, 45 (1980).  For a ruling to be against the manifest weight of the evidence, it must appear that a conclusion opposite to that reached by the trial court is clearly evident.  
People v. Barwig
, 334 Ill. App. 3d 738, 743, 778 N.E.2d 350, 355 (2002).  

We further find that the trial court applied the correct standard to the State's motion for a judgment before dismissing Tibbetts' amended petition.  Tibbetts argues that the trial court erred in finding that he failed to make a 
prima facie
 case because he presented some evidence to establish that he did not refuse to submit to a blood test.  According to Tibbetts, the trial court was required to evaluate the State's motion in this case like a motion for a directed verdict in a jury trial, which requires the trial court to view the evidence in the light most favorable to the nonmoving party.  The State argues that the trial court did not err when it weighed the conflicting evidence and the credibility of Tibbetts' witnesses.  The issue before us is whether the trial court was permitted to make credibility determinations and weigh evidence at the close of Tibbetts' case on the State's motion for a judgment as a part of its finding that Tibbetts failed to establish a 
prima facie
 case.  We find no error in the trial court's analysis.  

A motorist whose driver's license has been summarily suspended may file a petition to rescind the suspension pursuant to section 2-118.1 of the Illinois Vehicle Code (625 ILCS 5/2-118.1 (West 2002)).  A statutory summary suspension hearing is a civil action where the defendant motorist, as the petitioner, requests the judicial rescission of a suspension, and the State is placed in the position of a civil defendant.  
People v. Bavas
, 251 Ill. App. 3d 720, 723, 623 N.E.2d 876, 879 (1993).  The motorist bears the burden of establishing a 
prima facie
 case.  
People v. Orth
, 124 Ill. 2d 326, 337-38, 530 N.E.2d 210, 215 (1988); 
People v. Barwig
, 334 Ill. App. 3d 738, 743, 778 N.E.2d 350, 355 (2002); 
People v. Bonutti
, 338 Ill. App. 3d 333, 342, 788 N.E.2d 331, 338 (2003).  
Prima facie
 evidence has been defined as "the quantum of evidence required to meet the preponderance-of-the-evidence standard", and whether the motorist meets this burden of proof is a question of fact for the trial court.  
People v. Barwig
, 334 Ill. App. 3d 738, 744, 778 N.E.2d 350, 356 (2002); 
People v. Bonutti
, 338 Ill. App. 3d 333, 342, 788 N.E.2d 331, 338 (2003).  A motorist makes out a 
prima facie
 case if he puts on some evidence on every element essential to his cause of action.  
Kokinis v. Kotrich
, 81 Ill. 2d 151, 154-55, 407 N.E.2d 43, 45 (1980).  If the motorist establishes a 
prima facie
 case, the burden then shifts to the State to negate the motorist's claim and justify the suspension.  
People v. Bonutti
, 338 Ill. App. 3d 333, 342, 788 N.E.2d 331, 338 (2003).  The burden shifts to the State only if the trial court finds the motorist's testimony to be credible.  
People v. Orth
, 124 Ill. 2d 326, 341, 530 N.E.2d 210, 217 (1988); 
People v. Tucker
, 245 Ill. App. 3d 161, 164, 614 N.E.2d 875, 877 (1993).  However, the mere "fact that the motorist has presented some credible evidence in a rescission of summary suspension case does not require denial of the State's section 2-1110 motion."  
People v. Wise
, 282 Ill. App. 3d 642, 647, 669 N.E.2d 128, 131-32 (1996).  

Section 2-1110 of the Code of Civil Procedure provides:

"In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor.  
In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence.
  If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered.  If the ruling on the motion is adverse to the defendant, the defendant may proceed to adduce evidence in support of his or her defense, in which event the motion is waived."  (Emphasis added.)  735 ILCS 5/2-1110 (West 2002).  

Thus, section 2-1110 "recognizes that where the judge is the trier of fact it is illogical to require the [State] to put on [its] case when the trial court would rule for [the State] at the close of [the motorist's] case."  
People v. Wise
, 282 Ill. App. 3d 642, 646, 669 N.E.2d 128, 131 (1996).  

Pursuant to the foregoing statute, the trial court must consider all the evidence in ruling on a motion for a judgment filed by the State at the close of a motorist's case in chief, including evidence favorable to the State.  The trial court must also assess the witnesses' credibility, draw all the reasonable inferences from their testimony, and consider the weight and the quality of the evidence.  
Kokinis v. Kotrich
, 81 Ill. 2d 151, 154, 407 N.E.2d 43, 44 (1980).  All of this must be done by the trial court in determining whether or not the motorist has put on sufficient evidence at the close of his case to establish a 
prima facie
 case for rescission.  See 
Jackson v. Navik
, 37 Ill. App. 3d 88, 90, 346 N.E.2d 116, 119 (1976).  

The weight of the authority in Illinois rejects Tibbetts' contention that the standard for a directed verdict motion in a jury trial applies to a motion for a judgment in a nonjury case.  See 
In re A.P.
, 283 Ill. App. 3d 395, 397, 669 N.E.2d 1273, 1274 (1996); 
Wehde v. Regional Transportation Authority
, 237 Ill. App. 3d 664, 675-76, 604 N.E.2d 446, 455 (1992); 
Jackson v. Navik
, 37 Ill. App. 3d 88, 90-93, 346 N.E.2d 116, 119-21 (1976).  In this case, the trial judge very clearly stated his conclusions at the end of the summary suspension hearing and in his order dismissing Tibbetts' amended petition.  Specifically, the judge stated that he had considered the credibility of the witnesses and the weight and quality of the evidence and dismissed Tibbetts' amended petition because Tibbetts failed to present evidence to establish a 
prima facie
 case.  We find no error in the methods used by the trial court in adjudicating the State's motion and find that it applied the correct standard embodied by section 2-1110 of the Code of Civil Procedure and case law.  

We now consider the merits of Tibbetts' appeal.  Tibbetts' first contention is that the trial court erred when it found that he failed to establish a 
prima facie
 case that he had not refused to submit to a test pursuant to section 11-501.1 of the Illinois Vehicle Code (625 ILCS 5/11-501.1 (West 2002)).  Tibbetts seeks the reversal of the trial court's order on the basis that he presented some evidence to establish that he did not refuse the blood test.  There are three aspects to Tibbetts' argument, and we address the first two together.  First, Tibbetts contends that he cannot be found to have refused the blood test because he testified that Keeling offered to give him a breath test at the jail and he consented to take it.  Second, Keeling extended Tibbetts the right to counsel before making a decision about whether to take the blood test and then denied him the assistance of counsel.  As the State points out, the law does not afford Tibbetts the right to request a particular test or to consult with counsel specifically with regard to taking a test.  The import of Tibbetts' argument, however, is that once a motorist is given a right not provided by the law and that right is subsequently denied, any purported refusal by a motorist to take a test is negated.  See 
People v. Elledge
, 144 Ill. App. 3d 281, 494 N.E.2d 911 (1986); 
Goss v. People
, 272 Ill. App. 3d 498, 650 N.E.2d 1078 (1995).  

While we have no disagreement with the cases on which Tibbetts relies, he essentially argues that the trial court should have believed Tibbetts' testimony and disbelieved or disregarded Keeling's testimony.  As stated above, this is not the law.  We find no error in the standard applied by the trial court in ruling on the State's motion for a judgment.  The trial court was not required to view the evidence in the light most favorable to Tibbetts.  We found that the trial court properly and judiciously weighed the quality and quantity of the evidence and assessed the credibility of the witnesses put on by Tibbetts.  The trial court was required to assess the witnesses' credibility and weigh the evidence, including evidence in favor of the State, in determining whether Tibbetts made a 
prima facie
 case.  We agree that Tibbetts put on some evidence to establish that he had been offered a breath and the right to consult with counsel.  But some evidence is not enough–the law requires credible evidence.  We find no basis in the record for finding error in the trial court's ruling or order.

The third aspect of Tibbetts' first point on appeal is that he put on sufficient evidence to establish that he was unable to take a blood test and, hence, cannot be deemed to have refused it.  The determination of whether a motorist's physical inability to complete a test constitutes a refusal is made on a case-by-case basis.  
People v. Bank
, 251 Ill. App. 3d 187, 190-91, 621 N.E.2d 1054, 1056 (1993).  Notwithstanding Tibbetts' testimony regarding the extent, nature, and source of his fear of needles, the record is void of any medical evidence or other corroborating testimony regarding his aversion or fear.  More dispositive, however, is the absence of evidence demonstrating that it was physically or psychologically impossible for him to take a blood test.  See 
People v. Bank
, 251 Ill. App. 3d 187, 191, 621 N.E.2d 1054, 1056 (1993).  Further, Tibbetts' initial consent to the blood test requested by Keeling is utterly inconsistent with the existence of his purported "deep-rooted" fear.  In this case, we find that Tibbetts' fear of submitting to a blood test, even if we assume it to be true, is not sufficient to demonstrate that he was physically unable to take the test, nor should it excuse his refusal to submit to one.  See 
Borger v. Commonwealth, Department of Transportation
, 110 Pa. Commw. 512, 532 A.2d 892 (1987).  A contrary finding would enable a motorist to defeat the purposes of the implied consent statute by articulating a fear of the test to be administered–an absurd result we cannot allow.  We find that the trial court did not err in finding that Tibbetts clearly and unequivocally refused the blood test and that a 
prima facie
 case had not been made.  

We summarily reject Tibbetts' two remaining points on appeal.  Tibbetts contends that Keeling's request for a blood test was arbitrary and unreasonable and violated his constitutional rights to due process of law and to be free from unreasonable searches and seizures, because there was "no need" to request a blood test.  Without deciding whether Tibbetts has standing to assert a fourth amendment claim, as argued by the State, we find that Keeling was not required to articulate a need before requesting any or all such tests.  By statute, Keeling was vested with the discretion to administer one or all of the tests provided for therein, including breath, urine, and blood (625 ILCS 5/11-501.1(a) (West 2000)).  Furthermore, Tibbetts ignores the fact that Keeling found cannabis and related paraphernalia in his van and testified that he decided to request a blood test when he located the evidence.  The trial court specifically found Keeling's decision to be reasonable under the circumstances.  Further, the State notes on appeal that blood test results are necessary to determine whether to charge an impaired motorist for DUI only or for driving under the influence of drugs or the combined influence of drugs and alcohol under sections 11-501(a)(4) and (a)(5) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(4), (a)(5) (West 2000)).  We find no constitutional error with Keeling's request for a blood test in this case. 

Tibbetts' last argument is equally without merit.  He contends that sections 11-501.1(c) and (d) of the Illinois Vehicle Code (625 ILCS 5/11-501.1(c), (d) (West 2000)) are unconstitutionally vague and deprive Tibbetts of the due process of law because it is unclear and ambiguous whether a motorist is required to submit to a single test or multiple tests and whether an officer may request a motorist to submit to a single test or multiple tests.  We find no such ambiguity when the entire statute is construed as a whole, and we further find that a person of common intelligence could understand its provisions.  See 
People v. Falbe
, 189 Ill. 2d 635, 639-40, 727 N.E.2d 200, 204 (2000); 
In re Marriage of Kates
, 198 Ill. 2d 156, 163, 761 N.E.2d 153, 157 (2001).  Section 11-501.1(a) clearly reflects that a motorist may be requested to submit to any one or more of the tests.  625 ILCS 5/11-501.1(a) (West 2000).  Other provisions outline the consequences of refusing or failing any such test.  We decline Tibbetts' invitation to review a single section of the implied consent law in isolation.  

The trial court's order finding that Tibbetts failed to present evidence to establish a 
prima facie
 case and dismissing Tibbetts' amended petition turned on its assessment of the credibility of Tibbetts' witnesses who provided conflicting testimony.  The trial judge found that it was uncontroverted that Deputy Keeling had the discretion to request the tests he requested and that his request was reasonable under the circumstances.  The trial judge further found that Tibbetts' fear of a blood test was not supported by medical testimony and that there was no evidence that he was unable to submit to the test.  He found Tibbetts' refusal to be unequivocal.  Although the trial judge did not remark on the glaring inconsistency with regard to Tibbetts' fear of blood tests and his initial consent to Keeling's request for such a test, we find it hard to believe that the judge did not consider this incongruity while assessing Tibbetts' credibility.  Even without this assumption, however, the record does not reflect anything to indicate that the trial court erred in finding that Tibbetts had failed to make a 
prima facie
 case.  Thus, we cannot say that a conclusion opposite to that reached by the trial court is clearly evident.  Accordingly, the trial court's decision to dismiss Tibbetts' amended petition to rescind the statutory summary suspension of his license was not against the manifest weight of the evidence.  

III. CONCLUSION

For the foregoing reasons, we affirm the trial court's order dismissing Tibbetts' amended petition to rescind the statutory summary suspension of his license.  

Affirmed.  

WELCH and DONOVAN, JJ., concur.