THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNEST BAVONE, JR., Defendant-Appellant.

Second District   No. 2—08—0523

Opinion filed September 18, 2009.

Earl A. Vergara, of Ramsell & Associates, LLC, of Wheaton, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman, Lawrence M. Bauer, and Joan M. Kripke, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Ernest Bavone, Jr., appeals from an order of the circuit court of Du Page County denying his petition to rescind the summary suspension of his driving privileges. We affirm.

On December 8, 2007, defendant was arrested for driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 2006)). The arresting officer, Andrew Pelliccioni, served defendant with written notice of the statutory summary suspension of defendant's driving privileges. Defendant subsequently petitioned to rescind the statutory summary suspension. At the hearing on defendant's petition, Pelliccioni testified that he read the warning to motorists prescribed by section 11—501.1(c) of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501.1(c) (West 2006)) to defendant while defendant was in lockup. As Pelliccioni read the warning, defendant was continuously belching. Pelliccioni was permitted to testify that defendant appeared to be doing so intentionally. Pelliccioni observed defendant swallowing air before belching. Pelliccioni advised defendant that he was going to take him to the hospital for a blood test. When they arrived at the hospital, defendant was "checked in" by a nurse, who asked Pelliccioni why he and defendant were at the hospital. Pelliccioni explained that they were there to get a drug and alcohol test. The nurse left and Dr. Mayor met with defendant and Pelliccioni. Pelliccioni testified that "[Mayor] said are you going to be [submitting to] the officer's [request for a] blood draw," and defendant responded "no." Pelliccioni further testified, "I asked [defendant] personally if he was going to take the blood test, he said no."

Defendant testified that Pelliccioni did not ask him to submit to a blood test. Nor did Pelliccioni tell defendant that he was taking defendant to the hospital for a blood test. Once they were at the hospital, the doctor told defendant that he wanted to draw defendant's blood, but the doctor did not explain why. Pelliccioni was "out of [defendant's] view" when the doctor asked to draw defendant's blood. Defendant refused the doctor's request. At the close of defendant's case-in-chief, the State moved for entry of judgment in its favor. See 735 ILCS 5/2—1110 (West 2008). The trial court granted the motion and this appeal followed.

Section 11—501.1 of the Code (625 ILCS 5/11—501.1 (West 2006)), the so-called "implied consent" law, provides that a motorist operating a vehicle on a public highway in Illinois is deemed to have consented

that, if arrested for DUI, he or she will submit to chemical testing to determine the content of alcohol or other drugs or intoxicating compounds in his or her blood. The law provides for the summary suspension of the driving privileges of a motorist who submits to a test that discloses an alcohol concentration of 0.08 or more, or any amount of a drug, substance, or intoxicating compound in such person's breath, blood, or urine resulting from "the unlawful use or consumption of cannabis listed in the Cannabis Control Act, a controlled substance listed in the Illinois Controlled Substances Act, an intoxicating compound listed in the Use of Intoxicating Compounds Act, or methamphetamine as listed in the Methamphetamine Control and Community Protection Act." 625 ILCS 5/6—208.1(a)(2), (a)(4) (West Supp. 2007).

At the time of defendant's arrest, the minimum suspension period for a "first offender," as defined in section 11—500 of the Code (625 ILCS 5/11—500 (West 2006)), was three months. 625 ILCS 5/6—208.1(a)(2) (West 2006). If the motorist was not a first offender, the minimum suspension period was one year. 625 ILCS 5/6—208.1(a)(4) (West 2006). If the motorist refused a request to submit to testing, his or her driving privileges would be suspended for a minimum period of six months if the motorist was a first offender (625 ILCS 5/6—208.1(a)(1) (West 2006)) or three years if he or she was not a first offender (625 ILCS 5/6—208.1(a)(3) (West 2006)). A motorist requested to submit to testing must be warned of the consequences of refusing to submit to testing or of submitting to a test that discloses an alcohol concentration of 0.08 or higher or any amount of a drug, substance, or intoxicating compound resulting from the unlawful use of cannabis, a controlled substance, an intoxicating compound, or methamphetamine. 625 ILCS 5/11—501.1(c) (West 2006). A motorist may request a judicial hearing to rescind the statutory summary suspension of his or her driving privileges. See 625 ILCS 5/2—118.1 (West 2006).

Defendant first argues that his driving privileges should not have been suspended, because there was no proper request for him to submit to a blood test. Defendant argues that the request must be made by a police officer. In defendant's view, requests by medical personnel are insufficient because, "[b]efore a motorist should lose his license for 3 years, it should be made clear to the motorist that the request *** is being made for law enforcement purposes and not for medical care." Defendant suggests that he was unaware that the request was not for medical purposes and that his refusal would be invoked as a basis for suspending his driving privileges. In his reply brief, defendant argues that Pelliccioni "never made a clear, unequivocal request for a blood test" and that Pelliccioni "failed to reasonably

inform [defendant] that the doctor making the request was acting on [Pelliccioni's] behalf." These assertions fly in the face of Pelliccioni's testimony (the most significant aspects of which are simply omitted from the statement of facts in defendant's brief).[1] Pelliccioni testified that he advised defendant that he was taking him to the hospital for a blood test. While defendant was being "checked in" at the hospital, Pelliccioni told a nurse that defendant was there for drug and alcohol testing. A doctor then asked defendant if he was going to be submitting to *"the officer's* blood draw" (emphasis added), and when defendant said "no," Pelliccioni "asked [defendant] personally if he was going to take the blood test."

A statutory summary suspension hearing is a civil proceeding in which the motorist initially bears the burden of establishing a *prima facie* case by putting on some evidence on every element essential to his or her cause of action for rescission of the suspension. See *People v. Tibbetts*, 351 Ill. App. 3d 921, 926-27 (2004). "If the motorist establishes a *prima facie* case, the burden then shifts to the State to negate the motorist's claim and justify the suspension." *Tibbetts*, 351 Ill. App. 3d at 927. However, "[t]he burden shifts to the State only if the trial court finds the motorist's testimony to be credible." *Tibbetts*, 351 Ill. App. 3d at 927. When the State moves for entry of judgment at the close of the motorist's evidence, "the trial court must consider all the evidence *** including evidence favorable to the State" and must "assess the witnesses' credibility, draw all the reasonable inferences from their testimony, and consider the weight and the quality of the evidence." *Tibbetts*, 351 Ill. App. 3d at 927-28.

Here, in granting the State's motion, the trial court specifically found that defendant did not remember the relevant events as clearly as Pelliccioni did and that Pelliccioni "was clear in his testimony." The trial court's ruling on the State's motion will not be reversed unless it is against the manifest weight of the evidence. *Tibbetts*, 351 Ill. App. 3d at 926. In light of Pelliccioni's testimony, that is not the case here.

Defendant next argues that the summary suspension of his driving privileges must be rescinded because he was not warned that his driving privileges would be suspended if he submitted to blood or urine testing and any drug, substance, or compound resulting from

---

[1]Supreme Court Rule 341(h)(6) (210 Ill. 2d R. 341(h)(6)) provides that the appellant's statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly." In a case like this one, where the trial court heard conflicting testimony, a statement of facts that recites only the evidence favorable to the appellant is a flagrant and inexcusable violation of this rule.

the use of methamphetamine was detected in his blood or urine. The record establishes that, in administering the required warnings, Pelliccioni read aloud a form that made no reference to the consequences of testing positive for methamphetamine.

Under the implied consent law, a motorist who refuses to submit to testing is subject to a longer suspension of driving privileges than a motorist who submits to testing and fails. In *People v. Johnson*, 197 Ill. 2d 478 (2001), our supreme court explained that "[t]he threat of an extended suspension for motorists who refuse the test motivates individuals to take the test so that the State may gain objective evidence of intoxication." *Johnson*, 197 Ill. 2d at 487. Such evidence "helps the State achieve the overall goal of the statute—to help prosecute and remove 'problem drivers' from the highways." *Johnson*, 197 Ill. 2d at 487. Thus, the warnings required under the implied consent law are not designed to permit the motorist to make an informed choice about whether to submit to testing. Rather, the warnings are designed primarily to assist law enforcement authorities by encouraging cooperation with their efforts to collect evidence of intoxication. The court noted, however, that, as a matter of fairness, a police officer may not misinform a motorist, who might rely on the misinformation. *Johnson*, 197 Ill. 2d at 488.

While recognizing that the warnings prescribed by the implied consent law are mandatory, the *Johnson* court reasoned that "[t]o hold that *any* misinformation—even misinformation which does not concern the motorist—warrants rescission defeats the purpose of the statute." (Emphasis in original.) *Johnson*, 197 Ill. 2d at 488-89. Noting that "[i]f the motorist was misinformed as to the potential suspension of an individual in his or her situation, he was not properly warned" (*Johnson*, 197 Ill. 2d at 488), the *Johnson* court held that "in reviewing a petition for rescission based on inaccurate warnings, courts must determine merely whether the motorist is a member of the group affected by the inaccuracy" (*Johnson*, 197 Ill. 2d at 489). In *Johnson*, the motorist was incorrectly advised that a non-first-time offender who refuses or fails to complete testing is subject to a two-year suspension; the applicable suspension period for such a motorist is actually three years. However, because the defendant was a first offender, the *Johnson* court upheld the statutory summary suspension of his driving privileges, reasoning that the misinformation did not directly affect the potential length of his suspension. *Johnson*, 197 Ill. 2d at 489.

In an effort to distinguish *Johnson*, defendant insists that the warning about testing positive for methamphetamine applies to every driver, including him, and that "[e]very single motorist who is ar-

rested for DUI falls into the category of a person who must be read the enumerated substances that will result in the suspension of their driver's license." That is beside the point. The salient question is not whether defendant was warned in strict compliance with the implied consent law, but whether he was misinformed as to the potential suspension of an individual in his situation. If defendant had, in fact, used methamphetamine and was likely to test positive for use of that substance, the warning he received would have misinformed him as to the potential suspension he faced; although he would have been aware that *refusing* testing would lead to a suspension, he might not have realized that *submitting* to testing could also result in a suspension (albeit one of shorter duration). Defendant is not in that situation, however. There is nothing in the record indicating that, had he allowed his blood to be drawn, it would have tested positive for methamphetamine use. Furthermore, defendant fails to explain how the group of motorists consisting of those who have *not* used methamphetamine could be affected by the failure to warn that testing positive for methamphetamine will result in a suspension.

Defendant contends that permitting only those motorists who have actually used an illicit substance to complain about an inadequate warning would force such motorists to choose between losing their driving privileges and admitting to the use of an illicit substance. However, that result is entirely consistent with the evidence-gathering purpose of the implied consent law. We further note that forcing a motorist to make such a choice does not run afoul of the fifth amendment privilege against self-incrimination. That privilege does not relieve a litigant of the responsibility to establish the elements of his or her cause of action in a civil proceeding—even one defending property rights from governmental interference. See, *e.g.*, *United States v. United States Currency & Coin: $558,110.00*, 626 F. Supp. 517, 520 (S.D. Ohio 1985) (in a forfeiture proceeding under federal law, the fifth amendment does not shield a claimant from the requirement that he or she establish standing to challenge the forfeiture by alleging and proving a valid property interest in the seized property).

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

ZENOFF, P.J., and BOWMAN, J., concur.