# Illinois Official Reports

## Appellate Court

***People v. Brantley*, 2016 IL App (5th) 150177**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KEVIN C. BRANTLEY, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-15-0177 |
| Rule 23 order filed<br>Motion to publish<br>granted<br>Opinion filed | November 9, 2016<br><br>November 30, 2016<br>November 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Randolph County, No. 14-DT-52; the Hon. Eugene E. Gross, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Patrick Delfino, David J. Robinson, and Sharon Shanahan, of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, for the People.<br><br>No brief filed for appellee. |
| Panel | JUSTICE STEWART delivered the judgment of the court, with opinion.<br>Justices Chapman and Cates concurred in the judgment and opinion. |

## OPINION

¶ 1      The defendant, Kevin C. Brantley, was charged with driving under the influence in violation of section 11-501 of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(4) (West 2014)). He submitted to blood and urine testing, which revealed the presence of alprazolam, a controlled substance listed as a Schedule IV drug in the Illinois Controlled Substances Act (720 ILCS 570/210(c)(1) (West 2014)). A statutory summary suspension was scheduled to go into effect on April 14, 2015. The defendant filed a petition to rescind the statutory summary suspension, and after a hearing on the matter, the trial court granted the petition. The State appeals.

¶ 2      BACKGROUND

¶ 3      On December 8, 2014, the defendant was arrested for driving under the influence. He submitted to blood and urine tests, which showed the presence of a Schedule IV controlled substance (alprazolam) in his system.

¶ 4      On March 15, 2015, the defendant received a confirmation of statutory summary suspension showing that effective April 14, 2015, his driving privileges would be suspended as a result of his being arrested for driving a motor vehicle while under the influence of a controlled substance. The defendant filed a petition to rescind the statutory summary suspension. On April 6 and April 15, 2015, the trial court conducted hearings on the defendant's petition.

¶ 5      Officer Joe Crain, a police officer with the city of Chester, testified that on December 8, 2014, he received a telephone call from a witness who had seen the defendant's vehicle run off the road and cross the center line several times. Officer Crain and Officer Joe Jany located the vehicle and started following it. Officer Crain saw the defendant stop his vehicle partly into an intersection and cross the center line three times. Officer Crain activated his emergency lights and siren. According to Officer Crain, the defendant crossed the center line three more times before he eventually pulled over.

¶ 6      Officer Crain testified that the defendant stated he crossed the center line because he had a long day and was tired after his earlier trip to his doctor in St. Louis. The defendant told Officer Crain that, although he did not have them on, he was supposed to wear glasses to drive at night. Officer Crain asked to see the defendant's driver's license and proof of insurance. The defendant produced a copy of his breath alcohol ignition interlock device (BAIID) permit but was unable to find his proof of insurance. When the defendant opened the glove compartment to locate his proof of insurance, Officer Crain noticed two prescription medicine bottles. He questioned the defendant about the bottles, and the defendant told him that they were prescription Suboxone[1] that he received from his doctor in St. Louis earlier that day.

¶ 7      Officer Crain did not smell alcohol on the defendant's breath, and the defendant did not have slurred speech or bloodshot eyes. Officer Crain asked the defendant to perform field sobriety tests. Officer Crain administered the horizontal gaze nystagmus test and did not observe any impairment. He did, however, notice that the defendant's pupils were constricted.

---

[1]Suboxone is used to treat opioid dependence. See Suboxone, www.suboxone.com (last visited Nov. 30, 2016).

According to Officer Crain, the defendant failed the walk-and-turn test and the one-leg-stand test. Officer Crain placed the defendant under arrest for driving under the influence and took him to the hospital in Chester, where he consented to blood and urine tests.

¶ 8     Officer Crain testified that on February 19, 2015, he received the report from the Illinois State Police laboratory, and it indicated that the claimant had alprazolam in his blood. Alprazolam is a controlled substance listed as a Schedule IV drug in the Illinois Controlled Substances Act. 720 ILCS 570/210(c)(1) (West 2014). Alprazolam was not the medication that was in the defendant's car at the time of the stop. The defendant testified that he had a prescription for Ativan.

¶ 9     Officer Jany's testimony was consistent with Officer Crain's testimony. A video of the stop from the police car camera was admitted into evidence.

¶ 10    The court found the stop valid. The court indicated that it wanted clarification on whether taking Ativan will result in a positive test for alprazolam. The hearing resumed on April 15, 2015.

¶ 11    The defendant produced a medication summary from his doctor, which was admitted into evidence. It showed a prescription dated November 6, 2014, for 30 Xanax pills to be taken twice per day as needed. The defendant noted that Xanax is a brand name for alprazolam. The defendant did not present evidence about how much alprazolam he had taken. The State noted that the instructions for Xanax indicate that it can affect an individual's ability to properly operate a motor vehicle. The defendant argued that expert testimony would be required to show that Xanax could affect his ability to drive.

¶ 12    The court held that the stop was valid, that the video showed some impairment, and that the defendant consented to the blood test. The court found that, because he had a prescription for the Schedule IV drug Xanax, it was legal for the defendant to have it in his system. It further found that, for the purposes of statutory summary suspension, if the defendant had a valid prescription, he had established a reason for rescission. The court entered a written order rescinding the statutory summary suspension on the ground that the defendant "did not have a controlled substance in his system in violation of the Controlled Substance Act." The State appealed.

¶ 13                                     ANALYSIS

¶ 14    Before addressing the issue raised in this appeal, we note that the defendant has not filed a brief with this court. However, as the record is simple and the claimed error is such that this court can easily reach a decision without the aid of an appellee's brief, we shall do so. See *People v. Sarver*, 262 Ill. App. 3d 513 (1994).

¶ 15    The law provides for the summary suspension of the driving privileges of a motorist who submits to a test that discloses a drug in the person's blood resulting from the unlawful use of a controlled substance listed in the Illinois Controlled Substances Act. 625 ILCS 5/11-501.1(d), (e) (West 2014). "A statutory summary suspension hearing is a civil action where the defendant motorist, as the petitioner, requests the judicial rescission of a suspension, and the State is placed in the position of a civil defendant." *People v. Tibbetts*, 351 Ill. App. 3d 921, 926 (2004). "[T]he motorist initially bears the burden of establishing a *prima facie* case by putting on some evidence on every element essential to his or her cause of action for rescission of the suspension." *People v. Bavone*, 394 Ill. App. 3d 374, 377 (2009). Once the motorist

establishes a *prima facie* case, the burden shifts to the State to negate the motorist's claim and justify the suspension. *Id.* Generally, the trial court's decision on the defendant's petition to rescind a statutory summary suspension is subject to a two-part standard of review. *City of Highland Park v. Kane*, 2013 IL App (2d) 120788, ¶ 11. The trial court's factual findings and credibility assessments will be reversed only if they are against the manifest weight of the evidence, but its ruling as to whether the rescission was warranted is subject to *de novo* review. *Id.* If the facts are not in dispute, review is *de novo*. *People v. McLeer*, 2015 IL App (2d) 140526, ¶ 7. If the issue is one of statutory construction, this court will apply a *de novo* standard of review. *People v. Keithley*, 399 Ill. App. 3d 850, 852 (2010). In the instant case, no issues of fact are presented, and the issue is one of statutory construction. Our review is, therefore, *de novo*.

¶ 16    The State argues that the trial court erred in granting the defendant's petition to rescind his statutory summary suspension because he failed to prove that he used the controlled substance lawfully. If the defendant submits to a test that discloses any amount of a drug in his blood resulting from the unlawful use of a controlled substance listed in the Illinois Controlled Substances Act, the law enforcement officer submits a sworn report, which results in the suspension of the defendant's driving privileges. 625 ILCS 5/11-501.1(d), (e) (West 2014). The question before this court is the meaning of the word "unlawful."

¶ 17    The primary consideration in statutory construction is to determine and give effect to the legislature's intent. *People v. Ehley*, 381 Ill. App. 3d 937, 946 (2008). The plain and unambiguous language of the statute is the most reliable indicator of legislative intent. *Id.* The statutory summary suspension procedure is intended to quickly remove impaired drivers from the highways. *Id.* Section 11-501.1 should be liberally construed to accomplish that purpose. *Id.* at 946-47. The legislature enacted the statutory summary suspension procedure as a system separate from criminal prosecution because it frequently takes a long time for the State to prosecute impaired drivers and remove their drivers' licenses. *Id.* at 947.

¶ 18    Section 11-501(a)(6) of the Illinois Vehicle Code contains similar language to section 11-501.1(d). Section 11-501(a)(6) provides that a person shall not drive or be in actual physical control of any vehicle within this State while there is any amount of a drug in the person's breath, blood, or urine resulting from the unlawful use or consumption of a controlled substance listed in the Illinois Controlled Substances Act. 625 ILCS 5/11-501(a)(6) (West 2014). Since both statutes refer to a person who has any amount of a drug in his breath, blood, or urine resulting from the unlawful use of a controlled substance listed in the Illinois Controlled Substances Act, cases that have interpreted whether the use is the lawful or unlawful use of a controlled substance under section 11-501(a)(6) can assist in the interpretation of the same term in section 11-501.1(d).

¶ 19    In *People v. Rodriguez*, 398 Ill. App. 3d 436, 437 (2009), the defendant was convicted of driving a vehicle with a controlled substance in his urine in violation of section 11-501(a)(6) of the Illinois Vehicle Code. He appealed, arguing that the State failed to meet its burden of proof because it failed to introduce evidence that the controlled substance found in his urine was ingested unlawfully. *Id.* The court looked at the purpose of section 11-501(a)(6) and found that it was a traffic regulation intended to protect the public against motorists who drive under the influence of substances that may impair safe driving. *Id.* at 438-39. The court found that section 11-501(a)(6) was designed to ban driving a vehicle with any amount of an unlawfully-ingested controlled substance in a person's breath, blood, or urine. *Id.* Because the

statute referred to "the unlawful use or consumption of *** a controlled substance listed in the Controlled Substances Act," the court next looked at the Illinois Controlled Substances Act. (Internal quotation marks omitted.) *Id.* at 440. The court found that although section 302(c)(3) of the Illinois Controlled Substances Act (720 ILCS 570/302(c)(3) (West 2014)) included an exemption authorizing the lawful possession of a controlled substance pursuant to a lawful prescription, the burden of proof of any exemption or exception falls upon the person claiming it. *Rodriguez*, 398 Ill. App. 3d at 441. The court stated that although it may not be unlawful under section 11-501(a)(6) to drive a motor vehicle while taking a controlled substance "pursuant to a valid medical prescription," simply because someone has a medical prescription for a controlled substance does not mean that he can always operate a motor vehicle safely while taking that medication, and it is unlawful to drive a motor vehicle under the influence of any drug to the degree that it renders that person incapable of driving safely. *Id.* at 444-45; see 625 ILCS 5/11-501(a)(4) (West 2014). The court found that if a person voluntarily consumes a controlled substance pursuant to a valid prescription but the use of the substance renders him incapable of driving safely, he is precluded from raising a defense to the charge of driving under the influence that he was legally entitled to use the controlled substance. *Rodriguez*, 398 Ill. App. 3d at 445.

¶ 20    In *People v. Vente*, 2012 IL App (3d) 100600, ¶ 1, the defendant was convicted of driving with a controlled substance in her urine. She appealed, arguing that her conviction should be reversed because she tested positive for a controlled substance as a result of taking cough medication pursuant to a valid prescription. *Id.* The evidence at trial established that the defendant had morphine and codeine in her urine sample, which was consistent with the use of prescription cough medicine; she had a valid prescription for cough medicine; and she had taken the medication in accordance with the prescribed dosage. *Id.* ¶ 13. She testified that the cough medicine did not impair her ability to drive her vehicle safely. *Id.* ¶ 6. The court found that section 11-501(a)(6) does not require proof of a driver's impairment but only requires that a driver unlawfully use or consume any amount of a controlled substance. *Id.* ¶ 11. The court found that, because the defendant had a valid prescription for cough medicine and had taken the medication in accordance with the prescribed dosage, the presence of the controlled substances in her urine was not the result of "unlawful use or consumption" and reversed her conviction. *Id.* ¶ 13.

¶ 21    Both *Rodriguez* and *Vente* make it clear that if a person has any amount of drug in his breath, blood, or urine resulting from the use of a controlled substance listed in the Illinois Controlled Substances Act, the defendant must show more than just a valid prescription for the drug to make the use of it while driving a motor vehicle lawful. See *Rodriguez*, 398 Ill. App. 3d at 444-45; *Vente*, 2012 IL App (3d) 100600, ¶ 13. In the instant case, the defendant had the burden to establish a *prima facie* case for rescission of his statutory summary suspension. See *People v. Dittmar*, 2011 IL App (2d) 091112, ¶ 41. There is no dispute that alprazolam is a controlled substance listed in the Illinois Controlled Substances Act (720 ILCS 570/210(c)(1) (West 2014)). An individual may possess a controlled substance under the Illinois Controlled Substances Act if he has a lawful prescription for the drug. 720 ILCS 570/302 (West 2014). In the instant case, the defendant proved he had a valid prescription for alprazolam. However, contrary to the trial court's conclusion, the defendant needs to show more than the existence of a prescription for a controlled substance to obtain rescission of a statutory summary suspension. To make a *prima facie* case for rescission, the defendant must also show the terms

of the prescription and that he complied with the terms of the prescription, thereby making his use of the controlled substance lawful. The defendant's prescription authorized him to take one pill twice per day as needed. The defendant did not present any evidence about the dosage of Xanax he took, when he took it, or how often he took it. The instructions for the Xanax also indicated that it may affect an individual's ability to properly operate a motor vehicle. When the State noted that the instructions for the medication said it can affect one's ability to properly operate a motor vehicle, defense counsel replied that "you would have to have an expert here for those purposes." Because the defendant had the burden of making a *prima facie* case for rescission, if proof was needed to show that the alprazolam did not affect his ability to operate a motor vehicle, it was his burden to present this evidence. The defendant was charged under section 11-501(a)(4), which provides that a person should not drive under the influence of any drug or combination of drugs to a degree that renders the person incapable of safely driving. Thus, under the statute, it would be unlawful for the defendant to drive, even if he took the drug in accordance with a valid prescription, if it impaired his ability to drive safely.

¶ 22 The defendant failed to make a *prima facie* case for rescission of his statutory summary suspension. The statutory summary suspension statute is intended to quickly remove impaired drivers from the highways and should be liberally construed. *Ehley*, 381 Ill. App. 3d at 946-47. The trial court found that the video of the stop from the police camera showed "some impairment" on the part of the defendant. The instructions for the Xanax indicated it may affect an individual's ability to operate a motor vehicle. The defendant presented no evidence that the medication did not affect his ability to operate a motor vehicle. While he presented a valid prescription, he failed to present any evidence that he complied with the terms of the prescription. Submitting a prescription alone without evidence that the defendant's use of the controlled substance was within the stated parameters of the prescription is not sufficient to establish a proper basis to rescind a statutory summary suspension. The trial court, therefore, erred in granting the defendant's petition to rescind his statutory summary suspension.

¶ 23 At the second hearing, once the defendant's prescription for Xanax was presented, the trial court determined that the statutory summary suspension should be rescinded. The defendant and the State were not given the chance to present additional evidence. Under the circumstances, the case should be remanded to allow the defendant the opportunity to present evidence to show that he complied with the prescription and could drive safely, and the State the opportunity to present evidence to negate the defendant's claim and justify the suspension.

¶ 24                                                    CONCLUSION

¶ 25 For the foregoing reasons, the judgment of the circuit court of Randolph County is reversed and remanded for further hearing.

¶ 26 Reversed and remanded.