**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170735-U

Order filed August 5, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0735 Circuit No. 17-DT-1026 |
| CAMILE ARAIZA, | ) ) ) | Honorable Carmen Julia Lynn Goodman, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CARTER delivered the judgment of the court.
Presiding Justice Lytton and Justice O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The trial court did not err in granting defendant's petition to rescind the summary suspension of her driving privileges where the arresting officer did not have a reasonable, articulable suspicion of a traffic violation to justify the traffic stop.

¶ 2    Defendant, Camile Araiza, was issued two traffic citations for driving under the influence of alcohol (DUI)—one for driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2016)) and one for driving with a breath alcohol content over .08 (625 ILCS 5/11-501(a)(1) (West 2016)). Defendant was subsequently notified of the statutory summary

suspension of her driving privileges. Defendant filed a petition to rescind the summary suspension, arguing in part that the traffic stop was invalid. The trial court granted defendant's petition to rescind. The State appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On September 9, 2017, Officer Nicholas Clesceri of the Romeoville Police Department initiated a traffic stop of defendant's vehicle. Defendant was arrested for DUI and subsequently received confirmation of a six-month, statutory summary suspension of her driver's license. On September 28, 2017, defendant filed a petition to rescind the summary suspension, arguing, among other things, that she was not violating any law, regulation, or ordinance when she was stopped by Clesceri. On October 23, 2017, a hearing on defendant's petition to rescind took place, at which Clesceri testified and a video from Clesceri's squad car was entered into evidence.

¶ 5        At the hearing, Clesceri testified that on the night of September 9, 2017, he stopped directly behind defendant's vehicle, in a left turn lane (on westbound 135th street in Romeoville, Illinois). Clesceri testified there was another car "approximately two car lengths" in front of defendant's vehicle in the left turn lane. Clesceri testified that when the red light changed to a green left-turn arrow, the car in front of defendant's vehicle proceeded to turn left but defendant's vehicle just "sat there." He testified there had been no oncoming traffic when the light changed to the green left turn arrow. He further testified that after the light cycled to a green light, defendant initially did not move her vehicle but then made a left turn onto Route 53 southbound, running over the rumble strip in front of the median on Route 53, and making a wide left turn directly into the right southbound land of Route 53. He also testified that when

defendant was completing the left turn, the passenger-side wheels of her vehicle nearly came in contact with the right-hand curb on Route 53.

¶ 6      The video was played for the trial court, showing Clesceri had pulled behind defendant's vehicle in the left turn lane, at which time defendant was stopped behind another vehicle at a red light. A green left-turn arrow signal appeared on the stoplight for eight seconds, but defendant's vehicle did not move. During those eight seconds, it took two seconds for a vehicle traveling southbound (on Route 53) to clear the intersection. Another two seconds lapsed before the driver of the vehicle in front of defendant's vehicle began to drive forward and turn left. During the remaining four seconds before the traffic light's green arrow signal changed to a yellow signal, defendant's vehicle did not move forward at all. When the stoplight cycled through a yellow light and then a red light, which took 10 seconds, defendant still did not move her vehicle forward, although there appeared to be approximately one car length of space before the white stop line at the intersection for her to do so. After the signal changed to a solid green light, defendant did not immediately make a left-hand turn, at which two vehicles were passing through the intersection in the opposite direction—eastbound on 135th street. Once those vehicles passed and the intersection was clear, defendant immediately proceeded forward and made a left turn onto Route 53.

¶ 7      The video showed that on the south side of the intersection, on Route 53, a raised median divided the two southbound lanes of Route 53 from the northbound traffic of Route 53. Both ends of the median were painted bright yellow, with an unpainted, just slightly raised portion of concrete—a rumble strip—extending from the north end of the median toward the intersection.

¶ 8      In regard to the median and the rumble strip, Clesceri testified:

3

"On Route 53, this is, is a raised median at that point. And then just in front of the raised median, extending a little bit further, is an area that some people call a rumble strip but it is designed to alert a vehicle driving over it, it makes a noise when you do that, that you are approaching the median. That [r]umble strip is within a solid yellow line. That means it is not to be driven over."

¶ 9    Contrary to Clesceri's testimony, it appears from the video that the rumble strip was not "within a solid yellow line." The median was raised several inches and painted yellow on each end. The rumble strip was not painted and was only slightly raised.

¶ 10    In the video, it appears that as defendant made the left turn, the driver-side tires of her vehicle passed over the rumble strip, and she passed through the left lane (of the two southbound lanes of Route 53) and established her vehicle to travel within the right lane (of southbound Route 53). As defendant completed the turn, she drove in the righthand portion of the right lane (of Route 53) and remained within that lane. The passenger-side tires of her vehicle did not hit the right curb when she was completing the turn and she did not leave the right lane of Route 53.

¶ 11    Clesceri initiated a traffic stop of defendant's vehicle based on his observations. Clesceri requested defendant's license and proof of insurance, which defendant provided. Clesceri returned to his squad car and wrote defendant a citation for failing to obey a traffic control device, specifically the left turn arrow signal, in violation of section 306(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-306(a)(2) (West 2016)). After Clesceri returned to defendant's vehicle, he detected a "strong odor" coming from defendant's breath, observed a "slight reddening of the conjunctiva" of defendant's eyes, and noticed that defendant slurred the word "citation." He testified there "may have been" other slurred words but defendant slurring the

4

word citation stuck out in his memory vividly. After administering field sobriety tests and a portable breath test, Clesceri arrested defendant for DUI.

¶ 12    After the evidence was presented at the hearing on defendant's petition to rescind the summary suspension of her driving privileges, the trial court stated, "oftentimes people want to make sure that the intersection is clear even if the arrow is green." The trial court found that the evidence did not show that defendant had driven erratically, noting that defendant had ensured that the intersection was clear before she proceeded through the green light. The trial court granted defendant's petition to rescind for the lack of reasonable grounds for the traffic stop and the arrest.

¶ 13    The State appealed.

¶ 14                              ANALYSIS

¶ 15    On appeal, the State argues the trial judge erred in granting defendant's petition to rescind the summary suspension of defendant's driving privileges. The State argues that the trial court erred in concluding that the traffic stop was improper because the trial court used an incorrect legal standard in coming to that determination. Defendant argues the trial court did not err.

¶ 16    "A statutory summary suspension hearing is a civil action where the defendant motorist, as the petitioner, requests the judicial rescission of a suspension, and the State is placed in the position of a civil defendant." *People v. Tibbetts*, 351 Ill. App. 3d 921, 926 (2004). In a petition to rescind, the motorist may challenge the propriety of the traffic stop leading to his or her DUI arrest. *People v. Wood*, 379 Ill. App. 3d 705, 707 (2008). In reviewing a trial court's decision on a petition to rescind a statutory summary suspension, the trial court's factual findings and credibility assessments will be reversed only if the findings are against the manifest weight of the

5

evidence, while its conclusion as to whether the rescission was warranted is reviewed *de novo*. *Brantley*, 2016 IL App (5th) 150177, ¶ 15.

¶ 17        Both the fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution of 1970 protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The due process clause of the fourteenth amendment of the United States Constitution extends this constitutional guarantee to searches and seizures conducted by State officials. *People v. Gaytan*, 2015 IL 116223, ¶ 20. Generally, a stop of a vehicle based on a suspicion of violation of the law constitutes a seizure within the meaning of the fourth amendment and is subject to the fourth amendment's reasonableness requirement. *Id.* ¶ 20. In *People v. Hackett*, our supreme court stated the following summary of the principles governing the constitutionally of traffic stops:

> "Vehicle stops are subject to the fourth amendment's reasonableness requirement. [Citations.] ' "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." ' [Citation.] However, as this court has observed, though traffic stops are frequently supported by 'probable cause' to believe that a traffic violation has occurred, as differentiated from the 'less exacting' standard of 'reasonable, articulable suspicion' that justifies an 'investigative stop,' the latter will suffice for purposes of the fourth amendment irrespective of whether the stop is supported by probable cause. [Citations.] A police officer may conduct a brief, investigatory stop of a person where the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. [Citation.] The officer's belief 'need not rise to

6

the level of suspicion required for probable cause.' [Citation.] The distinction between these two standards may or may not be relevant, depending upon the facts of the case under consideration and the Vehicle Code provision at issue." *Hackett*, 2012 IL 111781, ¶ 20.

¶ 18    In this case, Clesceri indicated that defendant committed a traffic violation for failing to obey a traffic control device—the green arrow signal—because defendant failed to make a left turn after the turn arrow signal appeared. Section 11-305(a) of the Illinois Vehicle Code, provides, "[t]he driver of any vehicle shall obey the instruction of any official traffic-control device applicable thereto." 625 ILCS 5/11-305(a) (West 2016). Section 11-306(a)(2) of the Illinois Vehicle Code, provides:

"Vehicular traffic facing a green arrow signal, shown alone or in combination with another indication, may cautiously enter the intersection only to make the movement indicated by such arrow, or such other movement as is permitted by other indications shown at the same time. Such vehicular traffic shall yield the right of way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection." 625 ILCS 5/11-306(a)(2) (West 2016).

¶ 19    In construing a statute, the primary objective is to give effect to the legislature's intent. *Gaytan*, 2015 IL 116223, ¶ 23. The best indicator of the legislature's intent is the statutory language, given its plain and ordinary meaning. *Id*. In determining legislative intent, a court may consider the purpose and necessity for the law and the consequences that would result from construing the statute one way or the other. *Id*. The construction of a statute is a question of law that is reviewed *de novo*. *Id*.

7

¶ 20    Although section 11-305(a) of the Illinois Vehicle Code indicates that a motorist "shall obey the instruction of any official traffic-control device applicable thereto," section 11-306(a)(2) more specifically describes the "instruction" of a green arrow signal. Section 11-306(a)(2) indicates that a motorist facing a green arrow signal "may cautiously enter the intersection" to make the movement indicated by such arrow and "shall yield" the right of way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection. 625 ILCS 5/11-306(a)(2) (West 2016). A brief or momentary delay in proceeding through an intersection upon a traffic light changing to a green arrow does not violate section 11-306(a)(2) of the Illinois Vehicle Code where the plain language of the statute does not require a motorist to do so within any specified amount of time and mandates that the motorist yield the right of way to pedestrians in a crosswalk and other traffic lawfully within the intersection. See 625 ILCS 5/11-306(a)(2) (West 2016); see also *People v. Kelly*, 344 Ill. App. 3d 1058, 1061-62 (2003) (interpreting the language of section 11-306(a)(1), which provides "vehicular traffic facing a circular green signal may proceed straight through or turn right or left," as allowing reasonable time for the motorist to react to the signal change and ascertain it would be safe to proceed; holding a 20 second delay upon a traffic light changing to a green light was not a reasonable delay and violated the statute).

¶ 21    In this case, for the eight second duration of the green left turn arrow signal, defendant's vehicle did not move. During that time, the intersection initially was not clear of traffic and the car in front of defendant's vehicle did not move. After four seconds elapsed, the intersection was clear and the vehicle in front of defendant's vehicle proceeded forward and made a left turn. Only four seconds remained before the traffic light changed to a yellow signal. Based on the

language of the statute, we conclude that defendant not proceeding with a left turn during these four seconds did not violate section 11-306(a)(2) of the Illinois Vehicle Code.

¶ 22     The State argues that this court should reverse the trial court's order granting the rescission of defendant's summary suspension because the trial court applied the incorrect legal standard. The correct standard to be applied when determining whether an investigatory stop was justified is not the constitutional requirement of "probable cause" to arrest or search (synonymous with this State's statutory standard of "reasonable grounds"), but the lesser standard of whether the officer had a reasonable, articulable suspicion of criminal activity. *People v. Repp*, 165 Ill. App. 3d 90, 94 (1988).

¶ 23     Here, the State claims that Clesceri was justified in conducting a brief, investigatory stop of defendant's vehicle because he had a reasonable suspicion of criminal activity based on the following observations: defendant's vehicle remained in place during the green arrow signal; defendant did not move her car forward at all (toward the white stop line) while the traffic light cycled through a yellow and red signal; defendant waited a few seconds after the light changed to a green signal before making a left turn; and in executing the left turn, defendant made a sharp, sudden, and wide left turn into the right-hand lane of Route 53, driving over the rumble strip of the median and nearly hitting the right curb of Route 53. However, after viewing the video recording evidence, the trial court found the evidence showed that defendant ensured the intersection was clear before making the left turn and had not driven erratically when making the left turn. Our review of the video indicates the trial court's findings were not against the manifest weight of the evidence. Additionally, we note that contrary to Clesceri's testimony, the video indicated the rumble strip was not marked in a manner prohibiting a motorist making a left turn onto Route 53 from driving over it and defendant did not make any sudden or erratic movements

9

when completing the left turn. Therefore, there were no specific, articulable facts to create a reasonable suspicion that defendant committed or was about to commit a crime to justify the traffic stop. See *id.* (for a stop to be valid, the officer must have had knowledge of specific, articulable facts which, when combined with the rational inferences therefrom, create a reasonable suspicion that the person in question either has committed or is about to commit a crime ). Accordingly, based on the record in this case, the trial court did not err in granting defendant's petition to rescind.

¶ 24                                    CONCLUSION

¶ 25          The judgment of the circuit court of Will County is affirmed.

¶ 26          Affirmed.